UNITED STATES, Appellee,

v.

Hubert A. BURNETTE, Jr., Staff
Sergeant U.S. Air Force,
Appellant.

No. 61,180.
ACM 26655.

U.S. Court of Military Appeals.

March 19, 1990.

For Appellant: *Captain Darla G. Orndorff* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain David G. Nix* (argued); *Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor* (on brief); *Major Terry J. Petrie.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial which included enlisted members at Andrews Air Force Base, Maryland, and Bolling Air Force Base, Washington, D.C. Contrary to his pleas, he was convicted of three specifications involving use (2) and possession of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a.[1] We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED WHEN HE REQUIRED APPELLANT TO ACCEPT THE GOVERNMENT PROCURED FORENSIC TOXICOLOGIST AS HIS OWN REQUESTED EXPERT.

The underlying events of the crimes are not here in issue. Essentially, the Government's evidence was that appellant purchased cocaine from an informant who was accompanied by an undercover law-enforcement agent. The informant had already been apprehended for drug activity and claimed to have previously provided appellant cocaine on approximately twelve occasions. Both the informant and the agent were equipped with sound-recording devices, and tapes of the conversation during the transaction were played for the members. After the buy, other agents tried to

---

1. He was sentenced to a bad-conduct discharge, confinement for 2 years, forfeiture of $100 pay per month for 2 years, and reduction to E-1. The convening authority approved the sentence, and the Court of Military Review affirmed in a short-form opinion.

apprehend appellant, but he managed to escape in his vehicle. He was later apprehended after attempting to disguise himself in another servicemember's uniform. The cocaine purchased by appellant was later discovered in his unattended vehicle.

Appellant's conviction for use of cocaine came about by virtue of two urinalyses conducted on specimens provided by him. The legality of the seizures of appellant's urine was not litigated at trial and is not in issue here.

In his defense, with respect to the possession specification, appellant contended that he had heard the informant was selling drugs within the unit, and appellant was merely taking it upon himself to investigate. With respect to the use specifications, the defense attacked the chain of custody, both through appellant's testimony and through cross-examination of government witnesses. The defense also attacked the laboratory results through cross-examination of government witnesses.

With respect to the granted issue, military defense counsel prior to trial requested that the convening authority employ experts from a specified civilian laboratory at government expense to assist in the preparation of appellant's defense. In her request, counsel stated that she was not "capable of interpreting the chromatograms or numerical data contained in the 'litigation package' which will be used as evidence against" appellant. Further, counsel asserted that

> [n]o one from the Brooks Laboratory can offer a safe substitute because no one there is likely to report Brooks Laboratory or University of Utah errors [the laboratories which analyzed appellant's urine specimens]. Further, it creates an appearance of impropriety to have government experts doing critical analysis of evidence for the defense.

The convening authority denied the request.

At trial, civilian defense counsel renewed the request *in limine*. The military judge ascertained that the Government had hired another expert, who was independent of the two laboratories that had tested appellant's specimens. This expert, Dr. Mahmoud Ahmed Elsohly, had reviewed the test procedures of the two laboratories and had himself conducted tests on appellant's specimens. The military judge concluded that the defense could accomplish their aims in having expert assistance in reviewing the test procedures and results by consulting with Dr. Elsohly. Accordingly, the judge directed trial counsel to make Dr. Elsohly available to the defense prior to commencement of trial on the merits. Although the defense persisted in their objection, they indicated they would "meet with him . . . and try to do what we can with it."

Subsequently, still in an Article 39(a), UCMJ, 10 USC § 839, session, Dr. Elsohly was called as a witness, and his qualifications and role in the case were examined. At the conclusion of this testimony, the judge and civilian defense counsel clarified their positions:

> MJ: I find Doctor Elsohly is not here to represent either parties but to analyze the package and provide interpretation of the results thereof and that it appears that Doctor Elsohly can in fact provide the information which defense was seeking through this request, and in accordance with Rule 703, I rule that Doctor Elsohly is an adequate substitute for the request made by the defense. Since he is here present and we are still awaiting appointment of court members, the defense should have more than adequate time to be able to get with him and put to him any questions they have about the packages; the arithmetic; the mathematics or whatever about the tests reports.
>
> CIV
> DC: Your Honor.
>
> MJ: Yes, sir?
>
> CIV
> DC: If I may, at least so that I won't be out of order, I would frame it as a motion for reconsideration of your rul-

ing you just made. The reason we wanted an expert witness of our own is this test which is kind of one of the disputed tests, which was the one that came around mid-night after the alleged controlled purchase, the test was positive. *Now we have information supplied to us by the prosecution that the next day and somewhat less than 24 hours later ___ I'm not going to give the exact time, but it's somewhere in here; it might be even less than 20 hours ___ the accused took another test and it was negative. The report comes back negative. Now the thing about this test that came back negative is that maybe there is still some numbers here that indicates cocaine, but it doesn't reach that level where it jumps from negative to positive. It gets kind of close, and we were interested in how this stuff ___ how the body ___ whether this second test impeaches the first test,* which we think was taken in an unreliable manner in that it wasn't sealed and the initial placed on the seal itself, around the bottle and this type of thing which you have heard about, and this witness just said that in a case that he testified to, that his testimony differed from that of another expert about how these type of figures worked and the time it took for this, so we believe....

MJ: Mr. McKay, please understand my ruling. The body of this request is for a consultant and I have made my ruling based on what I have before me thus far and what the issues presently are. It seems that Doctor Elsohly would be a substitute to provide what is requested here. Now at such time you want to make a request for a witness that will testify to certain things, I will entertain that request, but this request is for a consultant, sir. It is not for an expert witness.

CIV

DC: Well, we wanted to consult with somebody other than this person about whether this time of digestion and the next step ___ we might have used him as a witness, but that was our purpose and I wanted to put it on the record.

MJ: This request is for a consultant and I have found that this individual is not biased and he's not predisposed to one side or another. He is here to discuss objective scientific data and when I read the body of this request, Appellate Exhibit V, that's what it's all about. So he is here at your disposal for your use. Please keep me posted....

(Emphasis added.)

■ It is well established that, upon a proper showing of necessity, an accused is entitled to the assistance of an expert to aid in the preparation of his defense. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *United States v. Garries,* 22 MJ 288 (CMA), *cert. denied,* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986). *See United States v. Johnson,* 22 USCMA 424, 47 CMR 402 (1973). This does not mean, however, that an accused is entitled to an expert of his own choosing. All that is required is that competent assistance be made available. *Ake v. Oklahoma, supra* at 83, 105 S.Ct. at 1097; *United States v. Toledo,* 25 MJ 270, 276 (CMA 1987).

■ As to the instant case, we agree that very little, if any, showing of necessity was required to entitle the defense to expert assistance in the interpretation of drug analyses. *See United States v. Murphy,* 23 MJ 310 (CMA 1987). Independent assistance—if desired—should have been provided.[2] The military judge did not err, however, in refusing to order the Government to provide the requested civilian experts.

**2.** Presumably, in a case like this, the litigation packet would be mailed to the defense expert for evaluation, and consultation could occur by telephone. If, thereafter, the defense wanted the expert present at trial, a standard showing of necessity would be required, unless the Government was agreeable to producing the expert.

In retrospect, it is clear that Dr. Elsohly would not have been an adequate substitute for such independent assistance. *United States v. Van Horn*, 26 MJ 434 (CMA 1988). In addition to validating the procedures and conclusions of the test laboratories, Dr. Elsohly himself conducted tests on appellant's urine samples and found they indicated positive for the presence of cocaine metabolite. Thus, notwithstanding his employment as an independent government contractor, Dr. Elsohly was presenting incriminating evidence against appellant on behalf of the prosecution. If there remained a genuine question regarding the test procedures and conclusions, it would hardly be fair to expect the defense to extract its ammunition from one of the very witnesses whose conclusions it was attacking. *Id.*

We do not, however, fault the military judge in his ruling. Not only had the defense limited its request to the named civilian experts; it also had specifically rejected the assistance of *any* government experts on the grounds of alleged bias and the appearance of impropriety. Needless to say, we are not sympathetic with such claims and have long rejected them. *United States v. Johnson, supra* at 427, 47 CMR at 405. As long as the Government was willing to provide competent assistance at government expense—which the defense preemptively rejected—the Government's burden was satisfied. The defense could either accept such assistance or look to its own resources.

Further, the military judge did not cut off the defense entirely in his ruling, but specifically advised counsel to "[p]lease keep me posted." Once it became apparent, during trial on the merits, what the total content of Dr. Elsohly's testimony was, it was incumbent on the defense to renew its request for independent expert assistance—if it was still deemed necessary.

It may be possible to infer from the record why the defense did not seek further assistance. As civilian defense counsel stated prior to trial on the merits, it was his understanding that *two* urine samples were taken from appellant shortly after his apprehension—one of which resulted in a positive finding and the other a negative finding. As the testimony on the merits unraveled, this proved not to be the case.

Rather, from portions of the *one* specimen taken from appellant shortly after his apprehension, two radioimmunoassay tests were run—both of which strongly indicated the presence of cocaine metabolite. On the first test, however, one of the *control* samples was out of range; therefore, the test was rerun. On the second test, all conditions and procedures were appropriate. This second test was the result reported positive by the laboratory. In addition, the same laboratory later conducted a gas chromatography/mass spectrometry analysis on another portion of appellant's specimen. This test also proved positive, and Dr. Elsohly's independent GC/MS test on still another portion of appellant's sample confirmed these results.

Nothing in the direct or cross-examination of Dr. Elsohly or any other witness indicated the scenario as initially understood by defense counsel. Thus, it appears that the defense's primary reason for wanting independent expertise did not pan out, which may explain why the request was not later renewed. In sum, the military judge did not err in refusing to provide the specified expert assistance to appellant.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (concurring):

For the reasons noted by Judge Cox, I view the military judge's decision to impose this particular expert on the defense as unjustified. *See United States v. Van Horn*, 26 MJ 434 (CMA 1988). Also, I agree that the defense request itself was likewise unreasonable and that the defense failed to pursue this matter as prudently required by the judge. Accordingly, I find no error. *United States v. Davis*, 29 MJ 357 (CMA 1990).