UNITED STATES, Appellee

v.

John M. NDANYI, Staff Sergeant,
U.S. Army, Appellant.

No. 95–0798.
Crim.App. No. 9202661.

U.S. Court of Appeals for
the Armed Forces.

Argued March 26, 1996.

Decided Sept. 30, 1996.

For Appellant: *David R. Dowell* (argued); *Lieutenant Colonel John T. Rucker* (on brief).

For Appellee: *Captain Chris A. Wendelbo* (argued); *Lieutenant Colonel Eva M. Novak* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During the late fall of 1992, appellant was tried by a general court-martial composed of officer members at Wiesbaden and Frankfurt, Germany. Contrary to his pleas, he was found guilty of rape (3 specifications), committing indecent acts with a minor, and committing indecent acts with another (2 specifications),[1] in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. On December 10, 1992, his court-martial sentenced him to a dishonorable discharge, confinement for 12 years, total forfeitures, and reduction to Private E–1. On March 23, 1993, the convening authority, in exercising his clemency power, disapproved the total forfeitures, but otherwise approved the sentence. On April 28, 1995, the Court of Criminal Appeals affirmed in an unpublished opinion.

On October 27, 1995, this Court granted review of the following questions of law:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN HE REFUSED TO GRANT THE DEFENSE MOTION FOR THE PRODUCTION AT GOVERNMENT EXPENSE OF AN EXPERT IN DNA TESTING TO ASSIST THE DEFENSE IN THE PREPARATION FOR TRIAL.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE DENIED THE DEFENSE MOTION FOR THE PRODUCTION AT GOVERN-MENT EXPENSE OF AN EXPERT IN DNA TESTING TO TESTIFY FOR THE DEFENSE AT TRIAL.

We hold that the military judge did not err in his denial of the defense motion for production at government expense of a particular, named expert assistant to help in the preparation of the defense. *United States v. Burnette*, 29 MJ 473, 475 (CMA 1990); *see generally United States v. Ingham*, 42 MJ 218, 226 (1995). We also hold that he did not err in denying a second defense motion for production at government expense of that same person as an expert witness for the defense under RCM 703, Manual for Courts–Martial, United States, 1984. *See United States v. Moore*, 32 MJ 56, 61 (CMA 1991); *cf. United States v. Van Horn*, 26 MJ 434 (CMA 1988). Finally, we hold that neither of these rulings by themselves or together deprived appellant of a fair trial or any other right under the Constitution. *United States v. Garcia*, 44 MJ 27 (1996).

Appellant was charged with various offenses including the rape of his step-daughter while he was stationed in Germany with his family. These charges arose after appellant's wife caught him in the middle of the night on top of his step-daughter in the girl's bed. He was kissing his step-daughter, and her nightgown was bunched up above her stomach. His wife immediately called the Military Police, who arrived and took the daughter to the post hospital. At the hospital, the daughter stated that the sexual abuse had begun when she was 11 years old and had continued until that particular time.

Subsequently, both a rape and pregnancy test were performed. Although the rape test was inconclusive, it was determined from the pregnancy test that the step-daughter was

---

1. The Court of Criminal Appeals stated that appellant was convicted of "indecent acts (two specifications)." The correct number is three. Additionally, the general court-martial order reflects findings of guilty to adultery (2 specifications) and carnal knowledge; these offenses were dismissed by the military judge. (R. 1071.) In addition the court-martial order states that specifications 4 and 5 of Charge III allege: "Indecent acts with a child under 16 years of age...." In fact those offenses were committing indecent acts with another. (R. 1039.) Finally, the specification of the Additional Charge of rape was submitted to the members on the Flyer (Appellate Exhibit LI) as specification 1 of Charge I. This resulted in original specifications 1, 2, and 3 of Charge I being renumbered on the flyer as specifications 2, 3, and 4. We note that the court-martial order reflects the offenses as they were originally listed on the charge sheet, not as renumbered on the Flyer.

pregnant with a dying tubal pregnancy. As a result, a segment of the fallopian tube with the pregnancy tissue was removed and sent to a civilian agency in England for DNA profiling to determine the probability of appellant being the father of the baby. Samples of appellant's blood were also analyzed. The test results showed that appellant was a genetic contributor to the pregnancy tissue or, in other words, the father of the baby.

2. Initially there was some confusion as to whether the request submitted to the convening authority involved a request for expert assistance prior to trial or a witness at trial. The military judge resolved this confusion on the record in his ruling on the defense motion. He stated:

Apparently the DNA issues were noted on the 27th of October at the time of the arraignment—and I'm going through this just to lay a background for what has developed and how my ruling fits in with all this—anyway, the DNA issue was originally noted on the 27th of October during the arraignment of the accused. The matter was apparently initially submitted to the convening authority on the 29th of October, as reflected by Appellate Exhibit XVIII, *and it was styled as a request for expert assistance, not a reference to seeking anybody as a witness.*

I would also note that the brief concerning the motion *in limine* with respect to DNA evidence was—while it is undated, it was apparently faxed on the 11th of November, this being Appellate Exhibit IV. And then, of course, the DNA motion *in limine* was itself litigated on the 20th of November and the *second defense request, again, for expert assistance, not for a witness* was filed on the 22nd of November and is part of Appellate Exhibit [XLIX].... [A]pparently this was denied on or about the 25th of November ...

And then finally I did not receive a defense motion prior to trial concerning this particular matter. It has been raised by the government due to their concern with the trial date of Monday, 7 December, *and apparently some contact with the defense indicating a desire to litigate the availability of a witness on the date of trial,* which could, from the government's standpoint, I understand their concern that this would force a continuance in a case that's already been continued a number of times.

In this regard I would note that notwithstanding the defense counsel's representations that the witness could be here on the trial date doing this today and that he is able to travel apparently fairly quickly. I would have to state that it kind of raises a question in the military judge's mind, why we would have waited rather than trying to take care of this matter earlier.

Prior to trial, the defense requested that the convening authority provide expert assistance at government expense to help the defense with expected DNA evidence from the prosecution. The convening authority denied this request. The defense counsel later made a motion to the military judge for production at government expense of an expert in DNA matters to assist in preparation of the defense's case and to testify at trial.[2]

Now, having laid all that out, concerning the actual motion that we have here, it has become really two issues as I see it. *The request is drafted as a request for expert assistance. It was treated by the SJA primarily as a request for assistance,* but also as a request—I apologize.... *primarily as a request for a witness,* but also as a request for expert assistance. And I'm going to address both of those matters.

\* \* \*

In this case, based on all—everything that is before the court at this time, the defense has not established why the individual, Mr. Coleman, is necessary. And in this regard I would note the following:

He was not necessary at the time the motion *in limine* was litigated on the 20th of November, at which point, as the government aptly notes, the defense conducted extensive questioning of the government witness and did not exhibit nor did they complain about any problems in doing that.

I would also note that the request to the convening authority does not specify what efforts, if any, the defense has used to date to educate itself, nor does the defense establish it could not get educational assistance from other government experts. And that would include not only experts within the CID laboratory community but other medical experts at various hospitals, both Army and Air Force, stationed and located within Germany.

Further, the defense gives no indication as to what, if any, efforts it has made to educate itself and, therefore, in light of that the conclusion would appear to be none.

Thus, it is not a complete statement of the reasons why an appointment is necessary as is contained in—as is required under Rule for Courts–Martial 703(d). When I say it's not a complete statement, I'm talking about the request dated 22 November making up Appellate Exhibit XLIX.

Based on this the convening authority's actions, which were based on the SJA's advice, and as I noted that advice addresses the matter both ways as a witness and as assistance (and with respect to why I believe that I would note specifically paragraph 2(e) of Appellate Exhibit XLIX, this is the paragraph 2(e) of the SJA recommendation which is part of Appellate

In response to the earlier request and the defense motion, the Government made an offer of proof that the resources of a United States Army Criminal Investigation Command (CID) laboratory located 5 miles from defense counsel's office were available. The laboratory was staffed by three experts in DNA testing who were each trained to FBI standards. The commander of the laboratory, Colonel Adams, indicated that the defense merely had to contact them to gain access to the facilities and the experts.

The defense requested that, instead of utilizing the proffered DNA experts, a named expert of the defense's own choosing be approved. In denying the motion, the military judge ruled that the defense failed to demonstrate necessity for the individual expert assistant and expert witness, that the defense did not show that the CID and other government agencies were inadequate, and that the request was not timely made.

The Court of Criminal Appeals held that appellant did establish the necessity for expert assistance under RCM 703. That court ultimately ruled, however, that the defense did not demonstrate that the experts provided by the Government were not an adequate substitute for the named defense expert. Unpub. op. at 2.

\* \* \*

Our starting point in resolving this case is a delineation of the precise nature of appellant's legal arguments. First, he contends that he was improperly denied his right under our case law to expert assistance funded by the Government to prepare his defense against an expected prosecution case based in part on DNA evidence. *See United States v. Garries,* 22 MJ 288 (CMA 1986). Second, he asserts that he was improperly denied his right to present a relevant and necessary expert witness on DNA testing at government expense as provided in RCM 703(d). Finally, he implies that these two rulings by the judge effectively prevented him from rebutting the prosecution's case based on DNA evidence and thus violated his constitutional right to present a defense. *See United States v. Woolheater,* 40 MJ 170, 173 (CMA 1994), citing *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73

Exhibit XLIX), and, therefore, I find there was no abuse of discretion on the part of the convening authority in denying this request.

In further reviewing all this I too find no necessity has been established under the circumstances now before the court and, therefore, believe that the request for expert assistance is not properly made and is denied. *Now, turning to the issue of this individual being requested as a witness.* Again we have to go back to Rule for Courts–Martial 703. Because it's an expert we need to look at 703(d), of course, but we also need to take a look at 703(c)(2)(B)(i) and the case law relating thereto. And I would note in this regard there's *no synopsis of expected testimony that was submitted to the convening authority concerning what this individual as a witness would have said.*

Now, again, clearly it would appear that the defense at the time of the submitting did not view this individual as a witness. But I would note that there was no synopsis. In fact, I would note that the potential synopsis wasn't even available at the time the request was submitted *since it apparently was developed last night, that being the 3rd of December, about 11 days after the request was submitted based upon further conversations between the defense counsel and Mr. Coleman,* at which point, apparently, Mr. Coleman was in a position to express more information about this.

*Based on that I find that the defense request submitted to the convening authority did not comply with the Rules for Courts–Martial and, therefore, the matter was not properly submitted to the convening authority to allow him to make a proper decision under those rules.* And, therefore, once again the convening authority's denial as to the witness aspect of the request does not appear to be an abuse of discretion on the part of the convening authority.

Now, other than the offer of proof the court really has no evidence and no basis to determine what, if any, would be the testimony of the proferred witness. And, therefore, is really not in a position at this point to determine whether or not anything that this individual would have to say would, in fact, be relevant and necessary in this case. Therefore, the relevance and necessity of Mr. Coleman as a witness also has not been established at this time.

\* \* \*

As I have explained, relevance and necessity in this particular case, both for assistance and as a witness, has not been established. Timeliness being an added factor into it. But taking all of these points into consideration, it's the determination of this court that the defense request for the production of Mr. Coleman in either capacity is denied.

(Emphasis added.)

L.Ed.2d 1193 (1982), and other Supreme Court cases.

### I

■ Turning to appellant's initial argument, we note that it is well-established that an accused servicemember has a limited right to expert assistance at government expense to prepare his defense. *See United States v. Kelly,* 39 MJ 235, 237 (CMA 1994); *United States v. Robinson,* 39 MJ 88 (CMA 1994); *United States v. Burnette,* 29 MJ 473 (CMA 1990); *United States v. Garries, supra; United States v. Mustafa,* 22 MJ 165 (CMA 1986); *United States v. Johnson,* 22 USCMA 424, 47 CMR 402 (1973). However, this government-funded expert assistance need only be provided when the accused shows that such assistance is "necessary." This requirement is similar to that existing for indigent defendants in federal civilian courts. *See Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.1987); *United States v. Greschner,* 802 F.2d 373, 377 (10th Cir.1986). It is also similar to that indicated in several Supreme Court cases. *See Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985); *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

■ Recently, this Court articulated a three-step test for determining whether such government-funded expert assistance was necessary, as follows:

> There are three aspects to showing necessity. First, why the expert assistance is needed. Second, what would the expert assistance accomplish for the accused. Third, why is the defense counsel unable to gather and present the evidence that the expert assistant would be able to develop.

*United States v. Gonzalez,* 39 MJ 459, 461 (CMA 1994), citing *United States v. Allen,* 31 MJ 572, 623 (NMCMR 1990), *aff'd,* 33 MJ 209 (CMA 1991). The expert assistance requested in appellant's case was needed because the prosecution intended to and did rely in part on expert DNA evidence to show appellant's guilt. *See Terry v. Rees,* 985 F.2d 283 (6th Cir.1993). Moreover, the requested expert evidence would help the defense undermine the prosecution's DNA case by revealing flaws in its foreign scientific methodology and its control methods. *Cf. United States v. Childress,* 58 F.3d 693, 732 (D.C.Cir.1995). The problem in appellant's case, however, concerns the third requirement for expert funding, *i.e.,* a showing of unavailability or inadequacy of assistance from other sources. *See generally United States v. Rinchack,* 820 F.2d 1557, 1565–66 (11th Cir.1987).

Here, trial counsel made an offer of proof that the defense could use the services of several DNA experts at a local CID Laboratory prior to trial. The defense, however, unilaterally rejected this offer on the basis that the government itself had utilized civilian experts. This argument, in our view, is legally insufficient.

It is well-established that an indigent is not entitled to all the assistance that a wealthier counterpart might buy, but only to the basic and integral tools. *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). In this regard, we note then-Judge Cox's words in *United States v. Garries,* 22 MJ at 290–91: "In the usual case, the investigative, medical, and other expert services available in the military are sufficient to permit the defense to adequately prepare for trial." Moreover, Judge Cox in *United States v. Burnette,* 29 MJ at 476, speaking for the Court, wrote:

> Not only had the defense limited its request to the named civilian experts; it also had specifically rejected the assistance of *any* government experts on the grounds of alleged bias and the appearance of impropriety. Needless to say, we are not sympathetic with such claims and have long rejected them. *United States v. Johnson, supra* at 427, 47 CMR at 405. As long as the Government was willing to provide competent assistance at government expense—which the defense preemptively rejected—the Government's burden was satisfied. The defense could either accept such assistance or look to its own resources.

Accordingly, absent a showing by appellant at trial that his case was unusual, *i.e.,* the

proffered scientific experts at the CID laboratory were unqualified, incompetent, partial, or unavailable, his motion for government-funded expert assistance was properly denied. *See United States v. Kennedy,* 64 F.3d 1465, 1472–73 (10th Cir.1995); *see also Matthews v. Price,* 83 F.3d 328, 335 (10th Cir. 1996) ("He has made no showing that he was unable to adequately assess the testimony of the state's witnesses or process his own witnesses without the assistance of a state-appointed investigator.").

## II

■ Appellant's second argument is that the military judge erred when he denied his request that Mr. Howard C. Coleman be employed as a defense expert witness at trial at government expense. *See generally* RCM 703. The record shows that Mr. Coleman was the President of Genelex Laboratories in Seattle, Washington, and that he was proffered by the defense as an expert witness in DNA testing. No synopsis of expected testimony from this expert was presented to the convening authority. However, at trial appellant averred that Mr. Coleman would testify about the differences between American and British methodologies in DNA testing and controls, and its adverse impact on the reliability of the British test such as the one employed by the Government in this case. The military judge denied the defense request for Mr. Coleman, *inter alia,* because of the defense's failure to present a synopsis of the testimony to the convening authority and the last minute nature of the submission of the synopsis of his testimony to the court.

RCM 703(d) provides for the employment of expert witnesses at government expense for the defense. It states:

(d) *Employment of expert witnesses.* When the employment at Government expense of an expert is considered necessary by a party, *the party shall, in advance of employment of the expert, and with notice to the opposing party, submit a request to the convening authority to authorize the employment and to fix the compensation for the expert.* The request shall include a complete statement of reasons why employment of the expert is necessary and the estimated cost of employment. *A request denied by the convening authority may be renewed before the military judge* who shall determine whether the testimony of the expert is relevant and necessary, and, if so, whether the Government has provided or will provide an adequate substitute. If the military judge grants a motion for employment of an expert or finds that the Government is required to provide a substitute, the proceedings shall be abated if the Government fails to comply with the ruling. In the absence of advance authorization, an expert witness may not be paid fees other than those to which entitled under subsection (e)(2)(D) of this rule.

(Emphasis added.)

RCM 703(c)(2) also requires certain procedural steps be taken to accomplish the same, as follows:

(A) *Request.* The defense shall submit to the trial counsel a written list of witnesses whose production by the Government the defense requests.

(B) *Contents of request.*

(i) *Witnesses on merits or interlocutory questions.* A list of witnesses whose testimony the defense considers relevant and necessary on the merits or on an interlocutory question shall include the name, telephone number, if known, and address or location of the witness such that the witness can be found upon the exercise of due diligence *and a synopsis of the expected testimony sufficient to show its relevance and necessity.*

\*      \*      \*

(C) *Time of request.* A list of witnesses under this subsection shall be submitted in time reasonably to allow production of each witness on the date when the witness' presence will be necessary. The military judge may set a specific date by which such lists must be submitted. *Failure to submit the name of a witness in a timely manner shall permit denial of a motion for production of the witness, but relief from such denial may be granted for good cause shown.*

(D) *Determination.* The trial counsel shall arrange for the presence of any witness listed by the defense unless the trial counsel contends that the witness' production is not required under this rule. If the trial counsel contends that the witness' production is not required by this rule, the matter may be submitted to the military judge. If the military judge grants a motion for a witness, the trial counsel shall produce the witness or the proceedings shall be abated.

(Emphasis added.)

Appellant concedes that his request at trial for the government financing of Mr. Coleman was untimely under RCM 703, but he contends that he showed "good cause" for relief from that rule. Final Brief at 16. He cites his efforts to produce this expert at his own expense, government recalcitrance, inactivity and denial, and the compelling nature of this expert's testimony. The military judge disagreed, suggested deliberate defense delay, and denied the defense request. He found that this request for funding of an expert witness was not properly filed with the convening authority (no synopsis of testimony) nor with that court (not expeditiously filed with judge). In view of the defense concession of untimeliness and the military judge's factual finding of deliberate delay, we uphold his RCM 703 ruling as lawful. *See United States v. Moore,* 32 MJ at 56; *see also United States v. Davis,* 29 MJ 357 (CMA 1990); *United States v. Rinchack,* 820 F.2d at 1566–67; *United States v. Childress,* 58 F.3d at 732.

### III

■ The final question in this case is whether these rulings by the military judge nonetheless precluded appellant from presenting his defense as guaranteed by the Fifth and Sixth Amendments. *See United States v. Woolheater, supra; United States v. Kennedy,* 64 F.3d at 1473. In this regard, we initially note that the Supreme Court has repeatedly held that an accused has no right under the Constitution to present his defense without regard for a jurisdiction's legitimate procedural and evidentiary rules. *See Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991); *Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 653–54, 98 L.Ed.2d 798 (1988); *cf. Montana v. Egelhoff,* —— U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion). Moreover, appellant has not challenged on constitutional grounds our decisions requiring a showing of necessity for government-funded expert assistance to an accused or the various requirements of RCM 703. *See United States v. Garcia,* 44 MJ 27 (1996). Accordingly, we initially hold that appellant's constitutional argument has not been properly framed or developed.

■ In any event, we must point out that the Government's expert DNA testimony was not a pivotal piece of the prosecution's case and was not essential to establishing appellant's guilt. Appellant's step-daughter testified that appellant had sex with her on the evening of July 19, 1992. She also testified that her mother came into her bedroom that night and caught appellant in the act. She finally testified that appellant had engaged in sexual intercourse with her on a number of occasions before that night without her consent.

Appellant's wife testified that she caught appellant naked in his step-daughter's bed late at night trying to kiss her; that her step-daughter's nightgown was bunched up under her breasts; and that there was "a white film across her pubic hair and … thighs." In light of this strong victim and eyewitness testimony, the defense needed to rebut much more than the Government's DNA evidence to establish a defense in this case. *Cf. Ake v. Oklahoma,* 470 U.S. at 82, 105 S.Ct. at 1097–98 (mental condition sole viable defense); *Starr v. Lockhart,* 23 F.3d 1280, 1288 (8th Cir.1994) (opining that appointment of a psychiatric expert was crucial because defendant's mental condition was his only defense). The military judge's denial of the defense motion to produce Mr. Coleman thus pertained to a peripheral matter in this case, *i.e.,* paternity, whose resolution in appellant's favor still would not preclude a guilty finding of the charged offenses. *See United States v. Moore, supra; United States v. Manning,* 79 F.3d 212, 219 (1st

Cir.1996). *Cf. United States v. Van Horn*, 26 MJ 434 (CMA 1988). Thus, since material or vital evidence was not denied the defense, we find no constitutional violation. *See United States v. Garcia*, 44 MJ at 31.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges CRAWFORD and GIERKE, and Senior Judge EVERETT concur.