**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Lloyd D. SLOAN, Defendant-Appellant.**

**No. 85–1166.**

United States Court of Appeals,
Tenth Circuit.

Nov. 12, 1985.

---

John E. Green, First Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Gary Peterson, Oklahoma City, Okl., for defendant-appellant.

Before MOORE and SETH, Circuit Judges, and BROWN, District Judge.*

JOHN P. MOORE, Circuit Judge.

This is an appeal following conviction of the crime of kidnapping, 18 U.S.C. § 1201, and a sentence of 75 years. Defendant has presented a number of alleged errors for our consideration, but we find one so pervasive that we consider it alone.[1] The issue is whether an indigent defendant is entitled to the appointment of a psychiatrist to aid in his defense when there is a genuine issue of his sanity and of his mental capacity to form specific intent even though a psychiatrist had previously been appointed to examine the defendant at the request of the government. We hold under the circumstances of this case the defendant had the right to such assistance, and failure to grant his request requires reversal.

Defendant was accused of kidnapping a woman in Oklahoma City and forcing her to accompany him to Hattiesburg, Mississippi. While they were in that city, the victim managed to escape and call the local police. Defendant was arrested shortly thereafter.

After arraignment, defendant filed a notice of intent to rely on expert testimony concerning mental condition. As an indigent he sought to have a psychiatrist appointed to assist in the defense pursuant to the provisions of 18 U.S.C. § 3006A(e)(1). In support of this request, counsel cited defendant's history of psychiatric treatment, abnormal electroencephalograph activity, and his treatment with anti-psychotic drugs.

One week later, the government filed its own motion for a psychiatric examination of the defendant, seeking to inquire into his competency to stand trial and his sanity at the time of the alleged offense. The government's motion was granted, and, at the suggestion of the government, Dr. Moorman Prosser was appointed to conduct the examination.

Dr. Prosser's written report to the court stated the defendant suffered from a borderline schizoid personality; but he was sane at the time of the alleged offense, and he was presently competent to stand trial. Defendant then renewed his motion for the appointment of a defense expert, but the request was denied upon the ground the request was not justified. The court further found that any bias of Dr. Prosser could be elicited through cross-examination at trial.

A competency hearing was held two days later, and Dr. Prosser appeared as an expert witness testifying to defendant's competence. Upon the basis of his testimony, the court found defendant competent to stand trial.

Following this hearing, defendant filed a third request for the appointment of an expert to aid in the defense. In this motion, he relied upon the previous representations as well as on additional medical records which had recently been delivered to defense counsel.

Dr. Prosser had examined those records and found evidence the defendant had sustained seizures, which Prosser considered a potential problem. Accordingly, when Prosser advised the court a "current EEG might be helpful," it ordered a second examination by Prosser on the Friday before the Monday trial date. No hearing was conducted following this examination, and the trial proceeded as set.

At a preliminary bench conference on the morning of trial, the court denied defendant's third motion for the appointment of a

---

1. In doing so, we do not imply there is substance to the remaining issues.

defense expert on the ground that there was "nothing in the record and no information to believe that a second opinion is necessary." The court advised defense counsel Dr. Prosser had obtained a current EEG, and nothing in the new evaluation had changed the doctor's previous conclusions regarding the defendant's competence and sanity.[2] Although defendant's counsel advised the court he sought an expert to assist in preparation of the defense of lack of capacity to form specific intent, the court made no ruling on this point.

The basis for defendant's argument here is 18 U.S.C. § 3006A(e)(1), which states:

> Counsel for a person who is financially unable to obtain investigative, *expert*, or other services *necessary for an adequate defense* may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... *shall* authorize counsel to obtain the services.

(Emphasis added.)

In this case, there was a representation that the services of an expert were needed, not only to provide evidence at trial, but also to aid defendant's counsel in the understanding of Dr. Prosser's report and the preparation of his cross-examination. Moreover, the request was based upon concrete evidence tending to show the defendant was suffering from a mental impairment. Thus, the trial judge was presented with a substantial question under § 3006A(e)(1) which had to be resolved.

In support of his argument, defendant relies upon *Ake v. Oklahoma,* — U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Unfortunately, *Ake* was decided after this matter was tried, and the trial judge did not have the benefit of the guidance it provides.

In *Ake*, the defendant's pretrial behavior was so bizarre, the state judge, on his own, appointed a psychiatrist to examine the defendant. The doctor, reporting the defendant was delusional and probably mentally ill, recommended an evaluation to determine his competence to stand trial. At a subsequent hearing, the court determined Ake was incompetent and committed him to a mental hospital.

Six weeks later, the court was advised that with continued use of anti-psychotic drugs, the defendant had become competent. At a later pretrial conference, defense counsel advised the court he would raise an insanity defense. To prepare for that defense, counsel sought the appointment of a psychiatrist at state expense. That request was denied. At trial no evidence of defendant's sanity at the time of the offense was offered, thus the jury rejected the insanity defense and returned verdicts of guilty. At the sentencing phase of the trial before the jury, the defendant was unable to present evidence to rebut the prosecution's witnesses, who testified the defendant was dangerous, nor was the defendant able to introduce mitigating evidence. The jury returned death sentences.

On appeal, the Supreme Court held that when a defendant makes a preliminary showing that his sanity at the time of an offense is likely to be a "significant factor" at trial, access to the aid of a psychiatrist is mandated by the Constitution. Furthermore, if the accused cannot pay for such aid, the state must provide it for him. The Court stated:

> This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the ... due process guarantee of fundamental fairness, derives from the belief that justice cannot be

---

**2.** Dr. Prosser's second report was not made available to defendant's counsel until six days after trial. Thus, counsel was hampered in his cross-examination of the doctor.

equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

*Ake*, 105 S.Ct. at 1093.

The Court further pointed out that in dealing with the ephemeral aspects of the human mind, the training of a psychiatrist is essential to identify the symptoms of insanity. Thus, the Court continued, when the mental condition of the accused is a real issue in the case, the assistance of a psychiatrist to perform an examination relevant to defense issues and to "help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of the State's psychiatric witnesses"[3] is essential to the concept of meaningful access to justice.

Coupling this reasoning with the mandatory language of 18 U.S.C. § 3006A(e)(1), it is evident when an indigent accused makes a clear showing to the trial judge that his mental condition will be a significant factor at trial, the judge has a clear duty upon request to appoint a psychiatric expert to assist in the defense of the case. That duty cannot be satisfied with the appointment of an expert who ultimately testifies contrary to the defense on the issue of competence. The essential benefit of having an expert in the first place is denied the defendant when the services of the doctor must be shared with the prosecution. In this case, the benefit sought was not only the testimony of a psychiatrist to present the defendant's side of the case, but also the assistance of an expert to interpret the findings of an expert witness and to aid in the preparation of his cross-examination. Without that assistance, the defendant was deprived of the fair trial due process demands. *United States v. Bass*, 477 F.2d 723 (9th Cir.1973). The judgment of the district court is reversed and the case remanded for a new trial.

---

3. *Ake, supra,* 105 S.Ct. at 1096.