UNITED STATES, Appellee,

v.

Darrin L. SHORT, Aviation Structural
Mechanic (Hydraulics) Second
Class, U.S. Navy, Appellant.

No. 98–0265.
Crim.App. No. 95–1617.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 17, 1998.

Decided May 26, 1999.

Sullivan, J., filed dissenting opinion.

Effron, J., filed dissenting opinion in
which Sullivan, J., joined.

GIERKE, J., delivered the opinion of the
Court, in which COX, C.J., and CRAW-
FORD, J., joined. SULLIVAN, J., filed a
dissenting opinion. EFFRON, J., filed a dis-
senting opinion, in which SULLIVAN, J.,
joined.

For Appellant: *Lieutenant Commander
L.J. Lofton*, JAGC, USN (argued); *Lieuten-
ant Commander R.C. Klant*, JAGC, USN,
*Lieutenant Commander Rebecca Gilchrist*,
JAGC, USN, and *Lieutenant Syed N. Ah-
mad*, JAGC, USNR (on brief).

For Appellee: *Major Clark R. Fleming*,
USMC (argued); *Commander D.H. Myers*,
JAGC, USN (on brief); *Colonel Charles Wm.
Dorman*, USMC.

Judge GIERKE delivered the opinion of
the Court.

A special court-martial composed of officer
members convicted appellant, contrary to his
pleas, of one specification of wrongful use of
marijuana, in violation of Article 112a, Uni-
form Code of Military Justice, 10 USC

§ 912a. The adjudged and approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S REQUEST FOR A GOVERNMENT URINALYSIS EXPERT TO ASSIST IN HIS DEFENSE.

We hold that the military judge did not abuse his discretion, for the reasons set out below.

*Factual Background*

The charges against appellant were based on a positive urinalysis, in which appellant's sample contained 16 nanograms per milliliter of the metabolite of marijuana, 1 nanogram over the Department of Defense cutoff for reporting samples as positive. Before trial, defense counsel submitted a request to the convening authority for the production of Dr. William Manders, a forensic toxicologist, to testify concerning passive inhalation and innocent ingestion. Trial counsel recommended that the request be denied, on the ground that a suitable substitute was available from the Naval Drug Screening Laboratory, Jacksonville, Florida.

When the court-martial convened, the convening authority had not yet acted on the request. Defense counsel renewed her request at an Article 39(a)[1] session before the military judge. The parties stipulated that Dr. Manders would testify that "both innocent ingestion and passive inhalation could lead to the positive test for THC, the metabolite found in marijuana, based on the levels found in the sample submitted by Petty Officer Short."

Defense counsel asserted at trial that the government witnesses would not testify that passive inhalation could produce marijuana metabolites at the level of 16 nanograms per milliliter. Trial counsel disputed her asser-

tion and argued that the Government was able to produce an adequate substitute for Dr. Manders.

As the Article 39(a) session progressed, defense counsel broadened the scope of her request for assistance. She requested "the opportunity to have somebody, who is not employed by the drug lab, assess the chain of custody and procedures which were used by the drug lab." She argued that "[i]t is unlikely that an employee of the drug lab is going to point out deficiencies or problems in the procedures used." The military judge denied the motion to compel production of Dr. Manders as not ripe for resolution, since the convening authority had not yet acted. The court-martial then recessed on May 31, 1995.

When the court-martial reconvened on August 8, 1995, defense counsel filed a motion for expert assistance requesting "independent (i.e., unaffiliated with the Naval Drug Screening Laboratory, Jacksonville) expert assistance." She asserted that the independent expert assistance was needed for the following purposes: "(a) to assist defense in understanding the scientific evidence (b) identifying problems with the scientific evidence and (c) preparing effective cross-examination of the government witness regarding the scientific evidence."

In support of her expanded request, defense counsel stated the following:

> The defense counsel in this case has no background in chemistry beyond basic high-school chemistry. Moreover, defense counsel does not have the knowledge of the drug-testing system used at NDSL Jax which would enable her to effectively cross-examine an expert in that area. The Standard Operating Procedure manuals are so voluminous and technical that defense counsel is unable to develop the required expertise independently.

> The Government will be assisted in interpretation and presentation of its evidence by the expert scientific knowledge, opinions, and testimony of Mr. Cary Hall, an expert from NDSL Jax. The Executive Officer of NDSL Jax has already stated

---

1. Uniform Code of Military Justice, 10 USC § 839(a).

that the command has a policy to "not allow" their personnel to "testify against each other" in courts-martial.

During argument on defense counsel's expanded request, trial counsel conceded that appellant was entitled to expert assistance, but would not concede that he was entitled to an independent expert, unaffiliated with the Navy Drug Screening Laboratory. Trial counsel asserted that adequate assistance was available from Mr. Cary Hall, "an independent and objective expert." When defense counsel disputed trial counsel's assertion that Mr. Hall was "impartial," the military judge asked her, "Did you have an opportunity to talk with Mr. Hall yourself?" She responded, "Sir, I have not talked to him, nor do I intend to."

Before ruling on the defense request for assistance, the military judge offered the following advice:

First let me say that one of the things that I certainly would encourage the defense counsel to do in this case, or any case, when it deals with a certain area of specificity or expertise, would be to call other defense counsel who have had experience in handling cases involving the drug labs and urinalyses in the past because they can provide assistance to you in how to go about litigating these cases, and there are a number of people on active duty in the naval service that are available to assist you in preparing a defense for this kind of case.

The military judge found that Mr. Hall was available "to explain to defense counsel the meaning of the scientific reports involved in this case, to interpret and explain the standard operating procedure manuals and regulations applicable to the drug lab and the Department of the Navy drug testing." He found further that "Mr. Hall is made equally available to both the Government and defense and will explain the urinalysis lab testing process fully and completely, without shading his testimony to favor either side in this case." Finally, he found that "Mr. Hall

will readily fully explain the urinalysis testing procedures at the Navy Drug Screening Lab, Jacksonville, Florida, including any difficulties, errors, or problems that the lab may have encountered generally or specifically with regard to the testing of the accused's sample."

The military judge then recited the defense burden of showing necessity and ruled that the defense had failed to meet that burden. Accordingly, he denied the motion for independent expert assistance.

The court-martial then recessed on August 8 and reconvened on August 15 for the trial on the merits. Mr. Hall testified for the prosecution regarding appellant's positive urinalysis. Defense counsel cross-examined Mr. Hall extensively about testing methods, control procedures, the likelihood of false positives, and the chain of custody. Defense counsel elicited admissions from Mr. Hall that some Navy laboratories, including the laboratory that tested appellant's sample, had experienced problems with testing accuracy. Defense counsel also elicited an admission that appellant's nanogram level was consistent with unknowing ingestion.

Appellant testified in his own defense and repeatedly denied knowingly using marijuana. He testified that he did not know why the marijuana metabolite was found in his urine. He testified that he was "very positive that [he] did not use, ingest, marijuana knowingly in any shape or form."

### Discussion

 RCM 703(d), Manual for Courts-Martial, United States (1998 ed.),[2] authorizes the employment of experts at government expense when their testimony would be relevant and necessary, and when the Government cannot or will not provide an adequate substitute. An accused is not automatically entitled to an independent expert in every urinalysis case. However, upon a proper showing of necessity, an accused is entitled to expert assistance to prepare a defense. *United States v. Burnette*, 29 MJ 473, 475

---

**2.** This Manual provision is the same as the provision that was in effect at the time of appellant's offense and court-martial.

(CMA 1990). An accused is not, however, entitled to a specific expert of his own choosing. "All that is required is that competent assistance be made available." *Id.* As this Court observed in *United States v. Garries*, 22 MJ 288, 290–91 (1986), "In the usual case, the investigative, medical, and other expert services available in the military are sufficient to permit the defense to adequately prepare for trial."

In *United States v. Gonzalez*, 39 MJ 459, 461 (1994), this Court adopted a three-pronged test for showing that expert assistance is necessary:

> First, why the expert assistance is needed. Second, what would the expert assistance accomplish for the accused. Third, why is the defense counsel unable to gather and present the evidence that the expert assistant would be able to develop.

In *United States v. Kelly*, 39 MJ 235, 238 (1994), this Court stated that "[d]efense counsel are expected to educate themselves to attain competence in defending an issue presented in a particular case," using "a number of primary and secondary materials" that are readily available. *See e.g.,* E. Imwinkelried, *The Methods of Attacking Scientific Evidence* (2d ed. 1992), cited in *Kelly, supra* at 238. Due process requires that the accused be given the "basic tools" necessary to present a defense, but defense counsel is responsible for doing his or her homework. *See Kelly, supra* at 237, citing *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

We review the military judge's decision on a request for expert assistance for abuse of discretion. *See United States v. Washington*, 46 MJ 477, 480 (1997), citing *Garries, supra* at 291.

Applying the foregoing principles, we hold that the military judge did not abuse his discretion by denying the request for independent expert assistance. The defense offered nothing to show that appellant's case was not "the usual case." *See Garries, supra* at 290–91.

With respect to her original request for expert assistance to establish passive inhalation or innocent ingestion, defense counsel failed to show necessity. Although she refused to talk to Mr. Hall and insisted that he could not support the defense theory of innocent ingestion, the record reflects the contrary. Defense counsel made her point in cross-examination of Mr. Hall, when he agreed that appellant's urinalysis results were consistent with passive inhalation or innocent ingestion.

With respect to defense counsel's attempt to expand her request, we hold that the military judge did not abuse his discretion. He recognized defense counsel's attempt for what it was: an assertion that she did not know how to try a urinalysis case. He responded appropriately by suggesting that defense counsel consult with more experienced counsel and talk to Mr. Hall about the scientific procedures involved in this case. Defense counsel responded that she would not talk to Mr. Hall, even though basic trial preparation would require that he be interviewed, because he was expected to testify on the merits.

The record of trial does not reflect whether defense counsel heeded the military judge's advice. In fact, nowhere in the record did defense counsel describe what attempts she made to educate herself, before or after the military judge's gratuitous advice.

While Mr. Hall could not satisfy defense counsel's request for an independent expert, the military judge gave defense counsel "the tools potentially to gather evidence to lay a foundation for the necessity of an independent [assistant]." *Gonzalez*, 39 MJ at 461, citing *United States v. Kelly, supra.* After having a week to heed the military judge's advice, defense counsel did not renew her request for expert assistance when the court-martial convened for the trial on the merits.

Even with the benefit of post-trial hindsight, appellant still did not satisfy the *Gonzalez* test. The record reflects that defense counsel cross-examined Mr. Hall exhaustively, elicited potentially damaging admissions about problems with testing accuracy in his

laboratory, and elicited scientific support for the defense theory of innocent ingestion.

In sum, there is nothing in this record to show necessity for an independent expert and nothing to show that the trial was rendered unfair by the military judge's refusal to order that an independent expert be provided. Accordingly, we hold that the military judge did not abuse his discretion.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (dissenting):

It is a fundamental right that the defense should be able to have expert help if it is *necessary. See, e.g.,* Art. 46, Uniform Code of Military Justice, 10 USC § 846. The majority has confused the defense's burden of showing that expert assistance is needed with the right to have an unconflicted expert once it is conceded that an expert is needed. Disregarding the *trial counsel's concession that expert assistance was necessary* in this case, and the fact that the judge implicitly ruled that expert assistance was necessary by offering the defense an expert to assist in its case, the majority relitigates the necessity question in place of an appropriate adequacy inquiry. Under the circumstances of this case, a judge cannot offer as the only expert to the defense a conflicted one, *i.e.,* the principal prosecution expert witness.

This Court granted review in this case on March 13, 1998. Appellant asked:

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S REQUEST FOR A GOVERNMENT URINALYSIS EXPERT TO ASSIST IN HIS DEFENSE.

I would hold that the military judge prejudicially erred when he only made available the prosecution's chief witness as an expert to assist the defense in this drug urinalysis case. *United States v. Burnette,* 29 MJ 473, 476 (CMA 1990); *United States v. Van Horn,*

26 MJ 434, 438 (CMA 1988). Fair is fair, and it is not fair for the judge to give as the defense's only option for expert help the service of the main prosecution witness.[1] Surely the judge must have realized the apparent conflict of interest of an expert who is given to help both sides of the same case. If there is a case that can be summed up by a phrase from the Bible, this is that case—"No man can serve two masters."[2] How could the judge give the defense an expert witness whose main job would be to defeat the opposing expert witness (himself)?

Let us look at how this situation developed for the judge to commit his error. On March 23, 1995, appellant provided a urine sample as part of a unit sweep ordered by the Commanding Officer, Naval Air Station Atlanta, Georgia. It tested positive for the metabolite of marijuana, tetrahydrocannabinol (THC), at 16 nanograms per milliliter, 1 nanogram over the Department of Defense cutoff for samples to be declared positive. Appellant was then charged with the wrongful use of marijuana in violation of Article 112a, UCMJ, 10 USC § 912a.

In a letter dated May 23, 1995, defense counsel requested that the convening authority produce Doctor William Manders as an expert witness in appellant's court-martial and to provide expert assistance to the defense on matters of innocent ingestion and passive inhalation. Trial counsel, in a letter to the convening authority on May 31, 1995, recommended denial of this witness and assistance request, in part on the basis that a "substitute expert" from the Naval Drug Screening Laboratory at Jacksonville, Florida, could be made available who could provide the same testimony and assistance as Doctor Manders. The parties to this trial later stipulated that Doctor Manders would testify that "both innocent ingestion and passive inhalation could lead to the positive test for THC, the metabolite found in marijuana, based on the levels found in the sample submitted by Petty Officer Short."

---

1. I find that the judge erred here in the narrow circumstances of this close case. I do not hold that a government laboratory could never furnish expert help to both sides in a contested case. That question is an open one for this Court.

2. The Bible, Matthew (6:24).

At an Article 39(a)[3] session prior to trial, defense counsel again submitted a request for an expert assistant dated July 25, 1995. It stated, *inter alia:*

## I. NATURE OF THE MOTION

In order to properly prepare for trial and effectively represent Petty Officer Short, the defense respectfully requests *independent (i.e., unaffiliated with the Naval Drug Screening Laboratory, Jacksonville)* expert assistance for the following purposes: (a) to assist defense in understanding the scientific evidence (b) identifying problems with the scientific evidence and (c) preparing effective cross-examination of the Government witness regarding the scientific evidence.

The accused respectfully moves the Court to enter an order directing the government to provide *an independent expert assistant....*

* * *

## II. STATEMENT OF FACTS

On 23 March 1995, AMH2 Short provided a urine sample during a unit sweep of personnel stationed at Naval Air Station, Atlanta. The sample was processed at the Naval Drug Screening Lab, Jacksonville ["NDSL Jax"] between 29 March 95 and 4 April 95. The results of this analysis include complex graphs, charts, and scientific terminology.

The defense counsel in this case has no background in chemistry beyond basic high-school chemistry. Moreover, defense counsel does not have the knowledge of the drug-testing system used at NDSL Jax which would enable her to effectively cross-examine an expert in that area. The Standard Operating Procedure manuals are so voluminous and technical that defense counsel is unable to develop the required expertise independently.

*The Government will be assisted in interpretation and presentation of its evidence by the expert scientific knowledge, opinions, and testimony of Mr. Cary Hall, an expert from NDSL Jax.* The Executive Officer of NDSL Jax has already stated that the command has a policy to "not allow" their personnel to "testify against each other" in courts-martial.

(Emphasis added.)

Defense counsel later noted the purpose for her request for independent expert assistance, as follows:

DC: As far as another step that the defense must go through is to show what the defense assistant is required for. We are requesting defense's expert assistance *to explain the documentation in the evidence packet, to point out what discrepancies to look for in this documentation, to help to compare the documentation as the process—the testing was performed to the DoD SOP of how it is supposed to happen, to point out weaknesses in the Government's case and to help to prepare an effective cross-examination of the Government's witness.*

* * *

Sir, the case law—to address a couple of points from the Government, first of all, the case law clearly states that expertise, if necessary, is applicable in all cases of court. Now, do we want an expert to write out our cross-examination questions for us? No. *But do we know what type of questions to ask unless we have the type of knowledge to see the deficiencies in the Government's case, to see the weaknesses in the government witnesses' [sic] argument? This is not only with regard to this test in particular* but also with regard to the Government—his expert is going to be explaining why the problem in the Norfolk drug lab wasn't—isn't applicable. How do we know the intricacies of all of these problems and all these discrepancies unless we have an expert?

* * *

MJ: Did you have an opportunity to talk with Mr. Hall yourself?

DC: Sir, I have not talked to him, nor do I intend to. *The one—another aspect of expert assistant [sic] is confidentiality, and Mr. Hall clearly cannot perform one of the*

---

**3.** Uniform Code of Military Justice, 10 USC § 839(a).

functions of being an expert assistant for the defense of confidentiality. I don't know how he would compartmentalize his brain in that way so that he could perform that function, and, similarly, there is nobody that I can talk to until I have confidentiality.

(Emphasis added.)

The military judge ultimately denied the defense request. He stated:

MJ: First let me say that one of the things that I certainly would encourage the defense counsel to do in this case, or any case, when it deals with a certain area of specificity or expertise, would be to call other defense counsel who have had experience in handling cases involving the drug labs and urinalyses in the past because they can provide assistance to you in how to go about litigating these cases, and there are a number of people on active duty in the naval service that are available to assist you in preparing a defense for this kind of case.

MJ: I further make the following essential findings:

That Mr. Cary Hall of the Navy Drug Screening Lab, Jacksonville, Florida, is a recognized expert in the field of urinalysis testing.

*That Mr. Hall will not be here to represent either party to this litigation, but to explain the procedures followed at the drug screening lab in Jacksonville and to analyze the evidence and interpret the test results.*

MJ: That Mr. Cary Hall of the Navy Drug Screening Lab, Jacksonville, Florida, is available to explain to defense counsel the meaning of the scientific reports involved in this case, to interpret and explain the standard operating procedure manuals and regulations applicable to the drug lab and Department of the Navy drug testing.

That Mr. Hall is available at no expense to the defense.

*That Mr. Hall is made equally available to both the Government and defense and*

will explain the urinalysis lab testing process fully and completely, without shading his testimony to favor either side in this case.

That Mr. Hall will readily fully explain the urinalysis testing procedures at the Navy Drug Screening Lab, Jacksonville, Florida, including any difficulties, errors, or problems that the lab may have encountered generally or specifically with regard to the testing of the accused's sample.

That the burden is on the accused to show the necessity for services of an expert assistant by showing the reasonable probability that the expert would be of assistance and that denial of expert assistance would result in a fundamentally unfair trial.

*That the accused has failed to meet this burden.*

*That the assistance of Mr. Cary Hall is sufficient in this case to ensure that the accused receives due process and a fair trial.*

*That the assistance of Mr. Cary Hall is sufficient to ensure that the accused can present an adequate defense.*

MJ: And the motion is denied.

(Emphasis added.)

At the outset, I note that the scope of our appellate review in this case is substantially limited by trial counsel's concession that appellant was entitled to government-funded expert assistance in this urinalysis prosecution.[4] *See generally* 4 C.J.S. Appeal and Error § 185 at 255 (1993) ("A party who voluntarily ... takes a position which is inconsistent with the right to appeal therefrom, thereby impliedly waives ... his right to have such judgment ... reviewed by an appellate court."). Normally, I would review the trial judge's decision denying such assistance in light of the three-pronged test of *United States v. Gonzalez*, 39 MJ 459 (CMA 1994). Under *Gonzalez*, it is the defense's burden to show why expert assistance is needed; what it would accomplish for the accused; and why defense counsel is unable

---

4. Trial counsel said, "[T]he Government does not contest in any way shape or form that the accused is entitled to expert assistance. In fact, that expert assistance [Mr. Cary Hall] is available and has been since the beginning of this case."

to gather such evidence himself. *Id.* at 461; *see United States v. Kelly*, 39 MJ 235, 238 (CMA 1994). Here, however, trial counsel's concessionary tactics made it unnecessary for the defense to fully develop the record on these factual matters. *See generally* S. Childress and M. Davis, 1 *Federal Standards of Review* § 6.03 at 6–28 to 6–29 (2d ed. 1992). Thus, I need only decide whether the expert assistance actually proffered to the defense was sufficient to satisfy the Government's duty to provide "competent" expert assistance. *Id.; see United States v. Ndanyi*, 45 MJ 315, 319–20 (1996); *Burnette*, 29 MJ at 475.

I further note that the defense rejected assistance in this case only from a particular government expert, offered by trial counsel and approved by the military judge, not from all government experts. *Cf. Burnette*, *supra* at 476 ("Not only had the defense limited its request to the named civilian experts; it also had specifically rejected the assistance of *any* Government experts."). Here, defense counsel noted in her initial proffer that

> [t]he Government will be assisted in interpretation and presentation of its evidence by the expert scientific knowledge, opinions, and testimony of Mr. Cary Hall, an expert from NDSL Jax. The Executive Officer of NDSL Jax has already stated that the command has a policy to "not allow" their personnel to "testify against each other" in courts-martial.

She further stated, "If an independent expert from another drug lab is appointed, the prejudice to the accused, although not eliminated, would be greatly reduced." Thus, the precise question before us is whether the particular government expert proffered as an assistant to the defense, *i.e.*, the prosecution's chief witness, constituted "competent" expert assistance as required by *Burnette* and *Ndanyi.*

As noted above, the type of expert assistance proffered by the Government and approved by the military judge must be "competent" to assist an accused in preparing his defense. As we recently said in *Ndanyi*, the Government, "in the usual case," may satisfy this responsibility by providing "the investi-

gative, medical, and other expert services available in the military." 45 MJ at 319 (quoting then-Judge Cox's opinion in *United States v. Garries*, 22 MJ 288, 290–91 (CMA 1986)). However, we also have said that such assistance is not sufficient where there is a showing by the accused at trial that his case is "unusual, *i.e.*, the proffered scientific experts at the ... laboratory were unqualified, incompetent, *partial*, or unavailable." *Id.* at 320 (emphasis added).

In *Burnette*, then-Judge Cox, speaking for the Court, more particularly addressed this substitution problem in the context of drug experts in urinalysis cases. He said:

> It is well established that, upon a proper showing of necessity, an accused is entitled to the assistance of an expert to aid in the preparation of his defense. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *United States v. Garries*, 22 MJ 288 (CMA), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986). *See United States v. Johnson*, 22 USCMA 424, 47 CMR 402 (1973). This does not mean, however, that an accused is entitled to an expert of his own choosing. All that is required is that competent assistance be made available. *Ake v. Oklahoma*, *supra* at 83, 105 S.Ct. at 1097; *United States v. Toledo*, 25 MJ 270, 276 (CMA 1987).
>
> As to the instant case, we agree that very little, if any, showing of necessity was required to entitle the defense to expert assistance in the interpretation of drug analyses. *See United States v. Murphy*, 23 MJ 310 (CMA 1987). *Independent assistance—if desired—should have been provided.*

29 MJ at 475 (footnote omitted) (emphasis added); *see also Van Horn*, 26 MJ at 439 (Everett, C.J., concurring) ("[I]t is only fair that servicemembers accused of using drugs be given meaningful access to experts who are willing to challenge testing procedures and results."); *United States v. Robinson*, 39 MJ 88, 90 (CMA 1994) (Cox, J., dissenting) (condemning strict application of "golden rule" in urinalysis cases.)

In this light, I note that it was well known to the military judge that Mr. Cary Hall was expected to be the chief witness for the prosecution at this court-martial and was treated as such throughout this trial. It was also established that he was employed by the very laboratory which tested appellant's urine and reported it positive. Finally, he was the supervising officer for the laboratory testing process during the period appellant's urine was tested and was responsible for the reports on drugs generated by the laboratory for purposes of litigation. Thus, the defense, who repeatedly requested any independent expert (*cf. Ndanyi, supra* at 319), was ultimately provided one who was obviously conflicted. *See Burnette, supra* at 476 (unfair "to expect the defense to extract its ammunition from one of the very witnesses whose conclusions it was attacking"); *Van Horn, supra* at 437–38 (independent expert required over expert with connection to the challenged laboratory). This was legal error. *Id.; see United States v. Crews,* 781 F.2d 826, 834 (10th Cir.1986); *United States v. Sloan,* 776 F.2d 926, 929 (10th Cir.1985).

Of course, even an erroneous denial of a defendant's request for expert assistance does not *per se* require reversal of his conviction. *See generally Moore v. Reynolds,* 153 F.3d 1086, 1112 (10th Cir.1998) (undeveloped assertions that denied expert assistance would be beneficial do not show sufficient prejudice). Here, however, as noted above, the prosecution's case against appellant rested entirely on urinalysis evidence. *See generally United States v. Manuel,* 43 MJ 282, 287 (1995); *United States v. Murphy,* 23 MJ 310 (CMA 1987) (drug convictions based exclusively on urinalysis evidence require careful scrutiny by factfinders and appellate courts). In addition, this urinalysis evidence was marginal in the sense that it exceeded the Department of Defense cutoff by a single nanogram/milliliter and was only "within 10 percent of the cutoff" for its confirmation test. *See Van Horn, supra* at 437–38 (nanogram count and cutoff evidence goes to weight and reliability of prosecution's case); *see also United States v. Mack,* 33 MJ 251 (CMA 1991).

Finally, the record before us shows "[trial] defense counsel did not make a single inquiry into the specific technical data or documentation underlying appellant's positive urinalysis." Final Brief at 14; *cf. United States v. Carlos,* 906 F.Supp. 582, 591 (D.Kan.1995) (examination of record shows no cross-examination deficiency). In these circumstances, the possibility of prejudice resulting from the military judge's failure to provide independent expert assistance to the defense is too great to permit affirmance of this conviction. *See United States v. Crews* and *United States v. Sloan,* both *supra.*

My Brother, Judge Effron, has very similar views on this case, and I join him and his well articulated dissent.

EFFRON, Judge, with whom SULLIVAN, Judge, joins (dissenting):

In order to obtain any expert assistance at government expense, the defense must show the necessity for it. *United States v. Gonzalez,* 39 MJ 459, 461 (CMA 1994); *see United States v. Burnette,* 29 MJ 473, 475 (1990); RCM 703(d), Manual for Courts–Martial, United States (1998 ed.). In this case, the prosecution affirmatively conceded this point when trial counsel stated that "the Government does not contest in any way, shape, or form that the accused is entitled to expert assistance." Unless the military judge expressly rejects such a concession, which the judge here did not do, it must be accepted by this Court for the same reason that any trial waiver is accepted on appeal—the concession relieved the defense from any burden. *See generally* S. Childress and M. Davis, 1 *Federal Standards of Review* § 6.03 at 6–28 to 6–29 (2d ed. 1992).

In order to satisfy the defense need for expert assistance, the Government offered Dr. Cary Hall. Dr. Hall was the same person who had provided expert assistance to the prosecution and who was to be the Government's chief witness against appellant. In that context, Dr. Hall clearly was conflicted in providing the defense with expertise with which to contest the charge at issue.

See United States v. Ndanyi, 45 MJ 315, 319 (1996); United States v. Van Horn, 26 MJ 434, 437–38 (CMA 1988).

It is also noteworthy that Dr. Hall was the supervising officer for the testing process at the Naval Drug Screening Laboratory, Jacksonville, Florida, which was the laboratory that had performed the testing on appellant's sample. Moreover, he was responsible for the reports on drugs generated by that laboratory for purposes of litigation. Defense counsel's contention—"It is unlikely that an employee of the drug lab is going to point out deficiencies or problems in the procedures used"—is underscored by the laboratory policy to not allow their personnel to testify against each other in a court-martial.

In light of the Government's express concession of the need for defense expert assistance, the conflict flowing from Dr. Hall's status as the principal prosecution witness against appellant, and the laboratory's own policy precluding its personnel from testifying against each other, I disagree with the majority's conclusion that the defense failed "to show necessity for an independent expert," 50 MJ at 374. The military judge abused his discretion when he denied the requested assistance, and, for the reasons discussed by Judge Sullivan, appellant was prejudiced by this error.