*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Marco A. REYES, Specialist
United States Army, Appellant

**No. 19-0339**

Crim. App. No. 20160704

Argued June 3, 2020—Decided July 30, 2020

Military Judge: Deidra J. Fleming

For Appellant: *Major Benjamin A. Accinelli* (argued); *Lieutenant Colonel Tiffany D. Pond* and *Captain Catherine E. Godfrey* (on brief); *Major Jack D. Einhorn* and *Captain Patrick G. Hoffman.*

For Appellee: *Captain Karey B. Marren* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams*, and *Major Craig J. Schapira* (on brief); *Major Virginia H. Tinsley* and *Captain Brian Jones.*

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN, OHLSON, SPARKS, and MAGGS, joined.

————————

Chief Judge STUCKY delivered the opinion of the Court.

Appellant served over 450 days in pretrial confinement. We granted review to consider whether the military judge erred in denying Appellant's motions to dismiss for violations of his right to a speedy trial guaranteed by Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2012). We specified an additional issue: whether the record of trial is complete, as required by Article 54, UCMJ, 10 U.S.C. § 854 (2012). We hold that the record of trial is complete, and the military judge did not err in denying the defense speedy trial motions to dismiss the charges and specifications.

## I. Posture of the Case

Contrary to his pleas, Appellant was convicted by a military judge, sitting as a general court-martial, of one specifica-

tion of rape, four specifications of sexual assault, two specifications of conspiracy to obstruct justice, one specification of willfully disobeying a lawful order, one specification of larceny, one specification of wrongful appropriation, two specifications of assault consummated by a battery, three specifications of adultery, and three specifications of obstructing justice. Articles 81, 90, 120, 121, 128, and 134, UCMJ, 10 U.S.C. §§ 881, 890, 920, 921, 928, 934 (2012). The military judge sentenced Appellant to a dishonorable discharge, confinement for thirteen years, and reduction to the grade of E-1. She credited Appellant with 457 days for his pretrial confinement and, in accord with the agreement of the parties, an additional ninety days for unspecified Article 13 credit, 10 U.S.C. § 813 (2012), for a total of 547 days.

The convening authority approved the adjudged sentence, and the United States Army Court of Criminal Appeals (CCA) affirmed. *United States v. Reyes*, 78 M.J. 831, 835 (A. Ct. Crim. App. 2019).

## II. Background

Charges were originally preferred against the accused on August 6, 2015, six days after he entered pretrial confinement. Five days later, the summary court-martial convening authority ordered a Rule for Courts-Martial (R.C.M.) 706 inquiry into Appellant's mental capacity and mental responsibility. Appellant's defense counsel refused to proceed to the Article 32, UCMJ, 10 U.S.C. § 832 (2012), investigation until the R.C.M. 706 inquiry was completed. The results were issued on day fifty-six of Appellant's incarceration. Appellant thereafter delayed the preliminary hearing for nineteen days. The Article 32 investigation was opened on day seventy-six but the results were not issued until day 105.

A week later, November 20, day 112, consistent with the preliminary hearing officer's recommendations, the original charges were withdrawn and dismissed. New charges were preferred that same day. The 82nd Airborne Division (Rear) (Provisional) commander referred the charges to trial on December 1, day 123.

Appellant was arraigned on December 9, day 131. The prosecution proposed a trial date of March 15, 2016. The defense counsel stated that she would not be available to try the

case until May 9, 2016, day 283. The military judge set trial for April 11–15, 2016, days 255–59. That same day, December 9, Appellant submitted his first offer to plead guilty.

On December 23, day 145, the defense requested four expert consultants: a forensic psychologist, a forensic psychiatrist, a Spanish translator, and a private investigator.

On January 7, 2016, day 160, the defense submitted a revised offer to plead guilty. The following day, the convening authority denied all of the experts, except the forensic psychologist.

On January 12, day 165, the defense filed motions to compel the three experts not approved by the convening authority. Meanwhile, the prosecution was fulfilling defense discovery requests. On January 19, day 172, the prosecution submitted the first draft of a stipulation of fact to the defense, noting that the offer to plead guilty would not be presented to the convening authority without a stipulation.

On January 26, day 179, the defense withdrew its previous offers to plead guilty and substituted a third offer, which was accompanied by a proposed stipulation. On January 28, the prosecution returned the stipulation with proposed changes, and requested a continuance in a scheduled pretrial hearing until February 8. Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012). Without objection from the defense, the military judge granted the continuance.

The defense submitted the stipulation and the fourth offer to plead guilty on February 2, day 186. Two days later, the convening authority rejected the offer. On February 5, day 189, the prosecution provided the defense with approximately 140 pages of emails between the Government and one of the alleged victims, Ms. A. On February 7, day 191, the defense filed a motion to dismiss for violations of Article 10—because of the time it took to get responses from the convening authority on offers to plead guilty—and for violating the discovery rules. The following day, the military judge granted the defense motion to compel with respect to two of the remaining three consultants he requested: a Spanish translator and a forensic psychiatrist. The prosecution started searching for such consultants.

The Government had difficulty locating available consultants for the defense. On February 18, the defense told the prosecution that it would obtain the Spanish translator. The prosecution learned the name of a forensic psychiatrist— Commander David Weis—on March 10, and the defense counsel asked for his telephone number on March 13.

On March 22, the prosecution informed the court that it had been unable to secure a forensic psychiatrist for Appellant and asked the defense for a name. The prosecution reiterated its request on March 24 and asked why the defense was declaring Commander Weis unavailable. The defense could not provide the prosecution with the name of a forensic psychiatrist who would be available.

On March 28, day 241, the defense moved to dismiss certain specifications for lack of speedy trial under the Sixth Amendment because the prosecution had still not provided "the defense with a Spanish translator and forensic psychiatrist."[1] The prosecution again asked the defense to name the experts they wished for the convening authority to approve.

On April 4, day 248, the military judge denied both the Article 10 motion from February 7 and the March 28 Sixth Amendment claim. The parties agreed to a new trial date of August 26, with Appellant saying that he was okay with the new trial dates.

On April 18, day 262, the charges the rear, provisional commander had referred to trial were withdrawn and rereferred by the commander returning from deployment.[2] Three days later, the defense submitted another offer to plead guilty. The convening authority submitted a counteroffer on May 6, day 280. The accused was arraigned on May 9 and the parties agreed to keep the trial date of August 26. Appellant accepted the counteroffer on May 9, rendering it a mixed-pleas case.

---

[1] Apparently, the defense had not been able to find a suitable Spanish translator.

[2] The rereferral appears to have been unnecessary. The original convening authority could have "transmitted" the charges to the returning commander. R.C.M. 601(g).

On August 5, the prosecution learned that Appellant had been contacting one of the witnesses, an alleged coconspirator, by telephoning members of her family and sending her thirty letters from confinement. During this period, the prosecution continued to provide the defense with discovery, as well as notice of its intent to use Military Rules of Evidence (M.R.E.) 413 and 404(b) evidence. On August 20, day 386, the prosecution gave the defense 1,419 audio files of Appellant's telephone calls from the confinement facility. Three days later, the prosecution provided further discovery concerning one of the alleged victims.

On the evening of August 24, two days before the scheduled start of the trial, Appellant filed a motion to dismiss, reiterating the earlier claims under Article 10 and R.C.M. 701, as well as alleging that the prosecution's M.R.E. 404(b) and 413 notices were untimely because the prosecution didn't advise the defense as to how that information would be used. Appellant also argued that he had not been given timely notice of the extensive audio files, the official military personnel file of one of the prosecution witnesses, and the June 2016 dismissal of a court case against one of the alleged victims.

At a hearing conducted on August 26, day 392, the military judge ruled that much of the prosecution's M.R.E. 404(b) and 413 evidence would not be admitted. On Monday, August 29, the military judge denied Appellant's August 24 motion to dismiss. The defense then requested a continuance. Trial was rescheduled for October 17, with Appellant's consent.

On September 20, the defense submitted a new offer to plead guilty. The convening authority submitted a counteroffer the following day. On September 22, the defense requested an additional $11,000 to pay the Spanish translator to continue to review the audio files. The following day, Appellant rejected the convening authority's September 21 counteroffer and withdrew from the plea agreement of May 16.

Thereafter, the defense filed a flurry of motions. On September 30, the convening authority approved the requested $11,000 for the Spanish translator. Appellant returned on October 11 to ask for an additional $23,750, plus travel expenses, for the Spanish translator. The convening authority approved $22,550 on October 13.

That same date, the defense moved under R.C.M. 701 for additional discovery and yet complained a week later when that discovery request resulted in the prosecution serving forty-two additional audio files on the defense. During an interview with one of the alleged victims, the defense discovered that that victim had emailed several attachments to one of the CID agents in the case and the emails had provided context for the attachments. The agent had preserved the attachments but not the emails. The prosecution recovered the emails from the alleged victim's mobile phone and provided them to the defense.

On October 17, at the request of the defense, the prosecution turned over copies of messages between the special agent and another victim. At a hearing on that date, the trial counsel realized that he had not turned over all of the screen shots from that victim's phones. He testified that he thought he had provided all the screen shots. On October 24, day 451, the military judge denied the defense motion to dismiss all charges and specifications for an Article 10 violation, Appellant pled not guilty to all charges and specifications, and trial commenced. Appellant's trial ended on October 28, 2016, day 455, after the military judge returned findings and announced the sentence.

### III. Verbatim Record

The UCMJ requires a "complete record of the proceedings and testimony" of a general court-martial only when the adjudged sentence includes a punitive discharge or "any other punishment which exceeds that which may otherwise be adjudged by a special court-martial." Article 54(c)(1)(A), UCMJ; *see also* R.C.M. 1103(b)(2)(B) (referring to a "verbatim transcript of all sessions").

After the initial referral of charges to trial, *Reyes I*, the military judge made several speedy trial rulings from the bench. After those charges were withdrawn from trial due to the change in convening authorities, a summarized record was made of those sessions, as there was no sentence in the case. After the completion of Appellant's trial on the rereferred charges, *Reyes II*, a verbatim record was made of that proceeding.

Appellant argues that, as he was in continuous pretrial confinement until the sentence was announced, the military judge's speedy trial rulings before the withdrawal and referral were part of the record and, therefore, a verbatim transcript of those proceedings was necessary for a complete record. The Government argues that, when the charges were withdrawn from the original court-martial and rereferred to trial after the commander returned from deployment, *Reyes I* was complete.

Appellant's position lacks merit. Neither Article 54, UCMJ, nor R.C.M. 1103 require a complete or verbatim record in cases such as *Reyes I*, when the charges are withdrawn before a sentence is adjudged. *See* Article 54(c)(1); R.C.M. 1103(e). Admittedly, the time from Appellant's entry into pretrial confinement through the withdrawal of the initial charges, and the reason for that withdrawal, is relevant to whether Appellant's right to a speedy trial was violated. And the military judge clearly understood as much. In ruling on the speedy trial motions, the military judge did not limit her consideration to events after the rereferral of charges by the returning commander; she considered the entire period of time Appellant was in pretrial confinement. Furthermore, the military judge specifically advised counsel that, if they wanted her to consider anything from *Reyes I*, it would have to be presented in written format, whether by stipulation of fact, a verbatim transcript, or by calling witnesses to testify.

There is no evidence in the record that the defense did not present everything it wanted to the military judge before she made her decision. Under these circumstances, we conclude that neither Article 54, UCMJ, nor R.C.M. 1103 required a verbatim transcript of the speedy trial hearings held in *Reyes I*. The record of trial in this case is complete.

### IV. Speedy Trial

"When any person subject to [the UCMJ] is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Article 10, UCMJ. "Article 10, UCMJ, is a fundamental, substantial, personal right." *United States v. Cooley*, 75 M.J. 247, 259 (C.A.A.F. 2016) (internal quotation marks omitted)

(citation omitted). It "is designed to [ensure] that the accused knows the reason for the restraint of his liberty, and to protect him, while under restraint, from unreasonable or oppressive delay in disposing of a charge of alleged wrongdoing, either by trial or by dismissal." *Id.* (alteration in original) (internal quotation marks omitted) (citation omitted). Whether an accused was denied his right to a speedy trial is a question of law we review de novo, deferring to the military judge's findings of fact unless those findings are clearly erroneous. *Id.*

"Article 10, UCMJ, does not demand constant motion but does impose on the Government the standard of reasonable diligence in bringing the charges to trial." *Id.* (internal quotation marks omitted) (citations omitted).

> In our examination of reasonable diligence, [w]e remain mindful that we are looking at the proceeding as a whole and not mere speed, and we give substantial deference to the military judge's findings of fact unless they are clearly erroneous. However, it is the Government's burden to show due diligence, and it is the Government's responsibility to provide evidence showing the actions necessitated and executed in a particular case justified delay when an accused was in pretrial confinement.

*Id.* (alteration in original) (internal quotation marks omitted) (citations omitted).

We determine whether the prosecution was reasonably diligent by employing the four-factor test articulated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant. *Cooley*, 75 M.J. at 259. None of these factors alone are a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* (internal quotation marks omitted) (quoting *Barker*, 407 U.S. at 533).

## A. The Length of the Delay

The length of delay is measured under Article 10 as it is for the Sixth Amendment: from the date an accused enters pretrial confinement until the commencement of the trial on

the merits.[3] *United States v. Wilder*, 75 M.J. 135, 138 (C.A.A.F. 2016); *United States v. Danylo*, 73 M.J. 183, 189 (C.A.A.F. 2014). Appellant was ordered into pretrial confinement on July 31, 2015, and trial on the merits commenced on October 24, 2016, a total of 451 days. The Government correctly conceded that the delay was sufficient to trigger the full *Barker* analysis. *See Cooley*, 75 M.J. at 260 (289 days was unreasonable in a complex investigation).

### B. The Reasons for the Delay

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted).

Appellant directs our attention to four specific ways in which the prosecution failed to exercise reasonable diligence in processing Appellant's case: (1) delayed processing the case in hopes that the convening authority would approve a pretrial agreement, which he did not; (2) failed to diligently obtain a court-ordered expert; (3) caused delay by assigning Appellant's defense counsel to a different installation; and (4) negligently complied with its discovery obligations and disclosed information in a manner that caused delays.

### 1. *Offers to Plead Guilty*

Undoubtedly, some of the delay in this case must be attributed to negotiations for a plea agreement. But it cannot be attributed to the prosecution alone. During the 451 days he was incarcerated before his court-martial commenced, Appellant submitted six offers to plead guilty and the convening

---

[3] *But see Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) (holding that the right to a speedy trial under the Sixth Amendment detaches upon conviction). Appellant was convicted on October 28, 2016, 455 days after he was ordered into pretrial confinement.

authority made at least two counteroffers. Both parties appeared eager to conclude a plea agreement but were unable to agree to terms that the convening authority would accept. And the military judge found that both parties acted in good faith throughout these negotiations. If Appellant was so concerned with the length of plea negotiations, he should have stopped presenting more offers to plead guilty, eschewed further delays, and demanded a speedy trial. But he did not. Instead, even after the military judge denied his motion to dismiss for violation of Article 10 on August 29, 2016, he requested a forty-eight-day delay in his trial.

### 2. *Court Ordered Experts*

Appellant argues that at least part of the delay in bringing him to trial was caused by the Government's failure to diligently obtain a court-ordered forensic psychiatrist with whom he could consult. The record suggests that Appellant wanted a government employee as the expert because he was concerned that the process of contracting for a private expert would take six weeks or longer.

The military judge found that the prosecution was "not trying to hamper the defense," had tried to locate such an expert, and the defense had not provided the name of an expert it wished the government to employ. The military judge concluded that any delay by the Government in finding this expert "was valid and was an attempt to aid the defense in the preparation of their case."

"[T]he trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Article 46, UCMJ, 10 U.S.C. § 846 (2012). "[U]pon a proper showing of necessity, an accused is [also] entitled to expert assistance to prepare a defense." *United States v. Short*, 50 M.J. 370, 372 (C.A.A.F. 1999); *see also United States v. Warner*, 62 M.J. 114, 118 (C.A.A.F. 2005).

When an accused considers the employment of an expert at government expense appropriate, he must "submit a request to the convening authority to authorize the employment and to fix the compensation for the expert" before employing her. R.C.M. 703(d). An accused may request any particular

expert, including a government expert. If he is entitled to an expert, the government must provide the named expert or a suitable substitute. *Short*, 50 M.J. at 372.

Although the government often may suggest to the defense an appropriate expert from government resources, it is not the prosecution's duty to locate defense experts; it is the defense counsel's duty to provide the convening authority with the names of the experts the defense wishes the government to employ on its behalf, which the defense did not. It is the convening authority's responsibility to approve and fund necessary experts requested by the defense or to provide suitable substitutes. *See United States v. Ford*, 51 M.J. 445, 456 (C.A.A.F. 1999) (citing *Short*, 50 M.J. at 373; R.C.M. 703(d).

The prosecution's good faith attempts to locate expert consultants for the defense did not relieve the defense of its responsibility. A "defense counsel is responsible for doing his or her homework." *Short*, 50 M.J. at 373. Furthermore, the inability to locate a necessary witness is a valid reason for delay. *Barker*, 407 U.S. at 531. We see no reason that the same rule should not adhere to expert consultants.

3. *Reassignment of Defense Counsel*

On May 16, 2016, Appellant told the military judge that he wanted Captain Nina Strickland Banks and his detailed defense counsel to represent him. In July, Captain Banks told the military judge that she was in the midst of a permanent change of station from Fort Bragg, North Carolina, to Fort Hood, Texas, and, that as soon as she signed out of her current assignment in Trial Defense Services, she would initiate the request to be assigned as Appellant's individual military counsel. The military judge noted that she was amenable to holding future sessions that would fit Captain Banks's schedule.

Appellant asserts that the reassignment of his defense counsel caused him to needlessly remain in pretrial confinement and to suffer anxiety "because it put into question the consistent and competent representation he was due." There is no evidence that Captain Banks's reassignment was anything other than routine, and Appellant has not alleged that he was either deprived of the benefit of her representation or

that her assistance was ineffective. Anxiety is part of the prejudice analysis, so it will be considered in *supra* Part IV.D.

### 4. *Discovery*

There is no question but that the prosecution was negligent in providing the defense with some discovery. In October 2016, shortly before trial, the trial counsel admitted that he had failed to provide twenty-one screenshots of text messages between two victims which had come into his possession thirteen months earlier. The military judge concluded that the trial counsel's failure to provide the information was not a deliberate attempt to hamper the defense, the defense had been provided similar information by the digital forensic examiner, and the failure did not affect a substantial right of the accused. There is no evidence that the military judge's findings of fact were clearly erroneous or that her conclusion was inappropriate based on those facts. Furthermore, the trial counsel's negligence did not appreciably delay the trial.

In addition, shortly before trial was set to begin in August 2016, the prosecution discovered that Appellant had been communicating with his coconspirator via telephone calls through members of her family and at least thirty letters sent to her, evidence it wished to introduce under M.R.E. 404(b). These communications had to be translated from Spanish before the prosecution could determine whether the evidence would be relevant to Appellant's court-martial. The defense requested a delay to review those materials.

In a series of rulings, the military judge determined that the prosecution had provided timely notice in accordance with M.R.E. 413 and 404(b) but refused to admit most of this evidence. We conclude that determining whether there was an attempt to tamper with witnesses is a valid reason for a delay, and the delay does not appear to have made an appreciable difference in moving the case to trial.

### C. Demands for Speedy Trial

On February 7, 2016, day 191, after delaying the pretrial hearing until after the sanity board issued its opinion, and then proposing a trial date of day 283, Appellant first moved for the case to be dismissed under Article 10, UCMJ. The de-

fense motion to dismiss was made three days after the convening authority denied Appellant's fourth offer to plead guilty.

The second motion to dismiss was made on March 28, 2016, day 248, little more than a week before the docketed trial date of April 11–15, 2016, and thirty-five days before the date Appellant had originally proposed for trial. After the military judge denied the Article 10 and Sixth Amendment motions to dismiss, Appellant requested a further delay. Then, with the express consent of Appellant, the parties agreed to a new trial date of August 26, 2016, day 292. Appellant was not seeking a speedy trial.

On August 24, 2016, two days before the trial on the merits was scheduled to begin, Appellant renewed his motions to dismiss from February 7 and March 28, 2016, for lack of speedy trial and discovery violations. The military judge denied the motions on August 29, 2016. The trial was redocketed, with Appellant's consent, for October 17–21 (days 444–48).

Appellant's final request for dismissal due to violations of his right to a speedy trial occurred in October 2016, shortly before the agreed upon trial date. The military judge denied the request on October 24, day 451.

Although Appellant submitted several motions to dismiss, alleging that his rights to a speedy trial were prejudiced, he did not actually demand a speedy trial. Assuming without deciding that a motion to dismiss for a violation of the right to a speedy trial is a demand for a speedy trial, Appellant demanded a speedy trial four times. This factor, therefore, weighs in Appellant's favor. *But see United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007) (stating that "repeated motions for dismissal of the … charge are not an assertion of the right, but are an assertion of the remedy. A motion for dismissal is not evidence that the defendant wants to be tried promptly" (citing *Barker*, 407 U.S. at 534–35)).

### D. Prejudice

We assess prejudice in light of the three recognized interests of an accused which the speedy trial right was designed to protect:

> (1) preventing oppressive pretrial incarceration;
> (2) minimizing anxiety and concern of the accused;
> and (3) limiting the possibility that the defense will
> be impaired. The inability of a defendant to ade-
> quately prepare his case is the most serious interest
> to be considered when reviewing alleged speedy trial
> violations for prejudice because the inability of [an
> accused] adequately to prepare his case skews the
> fairness of the entire system.

*Cooley*, 75 M.J. at 262 (internal quotation marks omitted) (ci-
tation omitted).

### 1. *Oppressive Incarceration*

Appellant makes no claim that his incarceration was
oppressive.

### 2. *Anxiety and Concerns*

"Here, we are concerned not with the normal anxiety and
concern experienced by an individual in pretrial confinement,
but rather with some degree of particularized anxiety and
concern greater than the normal anxiety and concern associ-
ated with pretrial confinement." *United States v. Wilson*, 72
M.J. 347, 354 (C.A.A.F. 2013).

The only particularized anxiety Appellant alleges affected
him was caused by delays he contends resulted from Captain
Banks being transferred to another duty location. He argues
that transfer caused him anxiety "because it put into question
the consistent and competent representation he was due."
But Appellant points to no evidence of any substantial delays
caused by Captain Banks's reassignment. And despite know-
ing that his counsel was in the midst of a reassignment, Ap-
pellant never requested that the transfer be postponed, nor
has he ever alleged that his counsel was unavailable to him
or that she failed to provide effective assistance. In fact, the
delays would have assuaged any concerns that Captain
Banks would not be able to properly prepare his case for trial.
Furthermore, Appellant had another defense counsel located
at Fort Bragg, who remained detailed to his case throughout
the trial preparation.

### 3. *Impairment of the Defense*

Appellant has not alleged that his defense was impaired,
such as by a missing witness. In fact, the delay worked in his

favor, as the defense was able to locate a forensic psychiatrist with whom to consult. Furthermore, "[t]here is no evidence indicating that the Government was engaged in a deliberate attempt to delay the trial in order to hamper the defense, which would weigh heavily against the Government." *Wilson*, 72 M.J. at 353 (internal quotation marks omitted) (citations omitted).

## E. Balancing

No doubt this case could have and should have been tried more expeditiously. Nevertheless, under all the circumstances, we conclude that the military judge did not err in determining that Appellant was not entitled to dismissal of the charges. There was no speedy trial violation.

## V. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed.