# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Staff Sergeant JARED W. STOUT
### United States Air Force

## ACM S32199

## 1 July 2015

Sentence adjudged 28 September 2013 by SPCM convened at Buckley Air Force Base, Colorado. Military Judge: Bradley A. Cleveland.

Approved Sentence: Bad-conduct discharge, hard labor without confinement for 30 days, restriction to base for 30 days, and reduction to E-4.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Roberto Ramírez; and Gerald R. Bruce, Esquire.

Before

HECKER, TELLER, and BENNETT
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BENNETT, Judge:

A special court-martial composed of officer members convicted the appellant, contrary to his plea, of using cocaine on divers occasions, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. He was sentenced to a bad-conduct discharge, hard labor without confinement for 30 days, restriction to base for 30 days, and reduction to E-4. The convening authority approved the sentence as adjudged.

On appeal, the appellant contends the military judge abused his discretion by (1) finding the defense's appointed expert consultant was an adequate substitute for an expert requested by name, (2) requiring the defense to admit certain documents into evidence, (3) failing to take appropriate remedial action in response to an improper sentencing argument, (4) allowing the panel to enter sentencing deliberations after a 14-hour day, and (5) allowing a government witness to testify about inadmissible material.[1] Finding that no error materially prejudicial to a substantial right of the appellant occurred, we affirm.

*Background*

The appellant's involvement with cocaine came to light after he provided a urine specimen on 12 April 2013 as part of a unit-wide inspection ordered by his commander. All members of the unit, including the appellant, were recalled to base and directed to provide a urine sample. Several weeks later, the Air Force drug testing laboratory reported that his sample was positive for cocaine. Consistent with the base policy following a positive result, the appellant was directed to provide a second urine sample on 7 May 2013. That sample was also positive for cocaine.

The defense theory at trial was that any ingestion of cocaine by the appellant was neither knowing nor intentional. Through cross-examination of government witnesses, the defense contested whether the tested samples belonged to the appellant, whether the laboratory tests were accurate, and whether the appellant would experience any effects from ingesting the low level of cocaine found in the urine samples. The appellant was convicted, as charged, of divers uses of cocaine between 12 March 2013 and 7 May 2013.

*Adequacy of Defense Expert*

Prior to trial, the defense submitted a request for a confidential defense expert in forensic toxicology.[2] In response, the convening authority appointed a civilian forensic toxicologist to assist the defense. Several weeks later, trial defense counsel noted her concerns about the qualifications, experience, and professionalism of the appointed expert based on her observations of the expert's performance in another case, and subsequently moved to compel the appointment of a different individual as the defense consultant. She also indicated the appointed expert was unfamiliar with the testing procedures used by the Air Force and the admissibility of various documents created by the laboratory, and that his education level was inferior to that of the government expert.

---

[1] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] Trial defense counsel initially asked for an expert consultant without requesting one by name. After receiving the convening authority's appointment of an individual to serve in that role, the defense initially agreed he was acceptable. Later, when the defense became dissatisfied with this expert, they moved to compel the appointment of another expert they had found through their own efforts.

Neither the defense nor the government requested a hearing on this matter, and the appointed expert did not testify concerning his qualifications. Instead, the military judge adopted the qualifications in the expert's curriculum vitae as fact, and concluded he was qualified to be an expert in forensic toxicology. The military judge then found the appointed expert to be an adequate substitute for the expert the defense had requested by name and that the appointed expert's qualifications were equal to or better than those of the government's expert. The military judge recognized that the appointed expert seemed to lack a "satisfying bedside manner" and that the expert could have been more accommodating to the defense, but found no evidence the expert had refused to meet with the defense to assist in the preparation of the appellant's case. Finally, the military judge concluded the expert was qualified to assist the defense in evaluating the government's evidence and preparing a defense.

When the court-martial convened, the filings and ruling on this matter were entered into the record as appellate exhibits. The adequacy of the defense consultant was not raised again before the military judge.

On appeal, the appellant contends the military judge erred in two respects. First, the appellant attacks the appointed expert's qualifications to provide assistance before and at trial, and he also alleges the expert was so inferior to the government's expert as to call into question the fairness of the appellant's court-martial. *See United States v. Warner*, 62 M.J. 114, 119 (C.A.A.F. 2005). Second, he questions whether the appointed expert was an adequate substitute for the expert the defense requested by name. He does not provide any information about the performance of the expert before and at the court-martial.

Article 46, UCMJ, 10 U.S.C. § 846, provides, in part, that trial counsel and trial defense counsel shall have equal opportunity to obtain witnesses. It is also applicable to defense requests for expert consultants. *Warner*, 62 M.J. at 118. An accused is "not entitled to a specific expert of [his] own choosing, especially where the Government offers a qualified substitute." *United States v. Weisbeck*, 50 M.J. 461, 464–65 (C.A.A.F. 1999). Instead, the issue is whether the appellant received "competent assistance." *United States v. Burnette*, 29 M.J. 473, 475 (C.M.A. 1990); *United States v. Ndanyi*, 45 M.J. 315, 319 (C.A.A.F. 1996). "A military judge's ruling on a request for expert assistance is reviewed for an abuse of discretion." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010). "An abuse of discretion occurs when the trial [judge's] findings of fact are clearly erroneous or if [his] decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 452 (C.A.A.F. 2008). "The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (internal quotation marks omitted).

Based on the appointed expert's extensive background, the military judge found

that he was a qualified expert in the field of forensic toxicology with the academic and professional experience needed to assist the defense. The appointed defense expert had worked for decades in the field of forensic toxicology, including supervising a state's forensic toxicology program. Although his experience may have been focused on issues relating to alcohol, there is ample evidence that he had experience with testing for other drugs as well. The military judge's findings of fact regarding those qualifications were not clearly erroneous.

Moreover, the military judge found that the appointed expert was equally, if not more, qualified than the government's expert. This finding was also not clearly erroneous. The military judge acknowledged the two experts had differing academic backgrounds but found the defense expert had significantly more practical experience than the government expert. Therefore this situation is distinguishable from that found in *Warner* where the defense expert lacked specific expertise relevant to the case, and the government's expert possessed that expertise. 62 M.J. at 119–120 (holding an accused was entitled to expert assistance by an individual whose qualifications were "reasonably similar to those of the government's expert").

In sum, because the appointed expert was qualified to provide the defense with expert assistance in the field of forensic toxicology and because his qualifications were sufficiently similar to those of the government expert, the military judge did not abuse his discretion when he denied the defense motion to compel the appointment of a different defense expert.[3]

*Admission of Defense Exhibits*

During cross-examination of the government's expert witness, trial defense counsel asked him about information contained in three documents that were prepared by the laboratory to document errors made during its processing of the appellant's 12 April 2013 urine specimen.[4] The expert initially indicated he could not answer the questions without seeing the documents. After learning these errors were not found in any documentation that had been admitted, the military judge asked if the defense intended to admit the documents into evidence. Trial defense counsel replied that she simply wanted to cross-examine the expert about the laboratory errors and was unsure

---

[3] Because the standard articulated in Article 46, UCMJ, 10 U.S.C. § 846, is equal access, and the military judge did not abuse his discretion in holding that the defense expert's qualifications were reasonably similar to the government expert's, we need not reach the issue of whether the defense expert's qualifications were equal to some other expert requested by the defense. There is no evidence the expert fell below the due process standard of competence. *See United States v. Burnette*, 29 M.J. 473, 475 (C.M.A. 1990).

[4] Defense Exhibit A is a memorandum for record (MFR) documenting that the sample batch had to be re-analyzed after the initial testing failed to identify a blind quality control. Defense Exhibit B is an MFR memorializing that the lab technician who tested the appellant's sample ran the test under another technician's log in. Defense Exhibit C is an "Intervention Log"—a document used by the chemists to document processes as they are occurring.

she could establish the foundation needed to admit them as business records. She denied there was any other reason behind her hesitation in admitting the documents. Ultimately, she was successful in laying that foundation, and the exhibits were admitted. The expert then responded to her questions about the errors documented by these exhibits.

Trial counsel asked the military judge to instruct the panel not to draw an adverse inference or speculate why these three documents were not presented as part of the government's exhibits, and that certain information had been redacted or excluded from the drug testing reports in accordance with evidentiary rules and case law. Trial counsel's concern was that the members might have believed the government was hiding evidence when, in fact, the government had not admitted these documents due to Confrontation Clause[5] concerns. Trial defense counsel objected to the instruction and, for the first time, claimed that the defense had not initially intended to introduce these exhibits.

Agreeing with the government and over defense objection, the military judge gave the following instruction:

> Defense Exhibits A, B and C were excluded from the drug testing report that was provided to the defense prior to trial. You are not to draw an adverse inference against the government for the exclusion of these documents.

The appellant now contends (1) it was error for the military judge to require the defense to admit the documents into evidence before allowing the expert to be cross-examined about their content, and (2) the instruction was factually erroneous and improperly bolstered the credibility of the government before the panel.

First, we disagree with the appellant that the military judge required the defense to admit any evidence in this case. Before these documents were admitted, the military judge and trial defense counsel had a fulsome discussion about the reasons why the defense had not sought to admit them. During their colloquy, the defense told the military judge that its only reason for not offering these exhibits was concern about being able to lay a proper foundation and that the defense had no tactical reason for not offering these exhibits. Thus, it is a mischaracterization to argue that the military judge "forced" the defense to admit Defense Exhibits A, B, and C.

Moreover, the military judge did not abuse his discretion by admitting Defense Exhibits A, B, and C into evidence. *See United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995) (holding a military judge's evidentiary decisions are reviewed for abuse of discretion). The appellant is correct that, under Mil. R. Evid. 703, the facts or data in a

---

[5] U.S. CONST. amend. VI.

case upon which an expert bases his opinion need not be admissible in evidence if "of a type reasonably relied upon by experts in the particular field" in forming such opinions. Here, however, the expert was initially uncertain about the content of these documents. When queried by the military judge about admitting the evidence, the defense made a tactical decision to introduce the extrinsic evidence of those errors.

These documents established a factual basis for the expert's testimony concerning the laboratory's errors and helped put his testimony into context. Under these circumstances, the military judge's finding that the panel members might be confused if the documents were not introduced was not clearly erroneous or influenced by an erroneous view of the law. *See United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007). Ultimately, these exhibits supported the defense argument that the Air Force Drug Testing Laboratory's processes were flawed and its results unreliable. Under these circumstances, we find the military judge did not abuse his discretion. Furthermore, the appellant has not presented any argument as to how he was prejudiced by the admission of these exhibits.

The appellant also argues that the military judge gave the members an erroneous instruction concerning Defense Exhibits A, B, and C, a question of law we review de novo. *See United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002). Generally, a military judge has "substantial discretionary power" to decide whether to issue a jury instruction. *Id.* (citation and internal quotation marks omitted); *United States v. Hopkins*, 56 M.J. 393, 395 (C.A.A.F. 2002) (holding the military judge has "considerable discretion in tailoring instructions to the evidence and law").

Apparently, trial defense counsel had received copies of Defense Exhibits A, B, and C. However, the military judge's finding that there was a chance that the panel members could draw an adverse inference against the government under these circumstances was not clearly erroneous, nor was his decision to issue an instruction influenced by an erroneous view of the law. His instruction did not "bolster" the government's credibility, as claimed by the appellant. The military judge's instruction was narrowly tailored, and he did not abuse his discretion by instructing the panel in this manner.

*Sentencing Argument*

The appellant contends the military judge abused his discretion in denying the defense's request to prohibit the panel from adjudging a punitive discharge due to the government's improper sentencing argument. Trial counsel made the following argument during sentencing:

> Staff Sergeant Stout illegally ingested a highly addictive drug,
> while -- and he did so while as [a noncommissioned officer].

He was in a position of leadership and responsibility, a position of trust. Staff Sergeant Stout was illegally ingesting cocaine, also, while he held a top secret sensitive compartment information security clearance. As some of you may be aware, this is a special security clearance that allowed and entrust --

Trial defense counsel immediately objected, and the military judge sustained that objection citing his concern that trial counsel might be "seeking a higher punishment based on the accused's duties."

During a subsequent Article 39(a), UCMJ, 10 U.S.C. § 839, session, trial counsel conceded the argument was improper but argued that the impact was minimal because the defense objected so quickly and the objection was sustained. Trial counsel further argued that individual voir dire and a curative instruction would adequately remedy the problem. Trial defense counsel disagreed, arguing the bad-conduct discharge should be eliminated as a potential punishment.

The military judge found trial counsel made improper comments about the appellant's security status, which was related to his job, and that there was no evidence that the appellant's drug use affected his duties. The military judge further found trial counsel's improper argument to be not so egregious that it could not be cured with an instruction and panel member voir dire. The military judge gave the members the following curative instruction:

> Members, during the sentencing argument you heard [] trial counsel make an improper sentencing argument and argue facts that were not in evidence. Specifically, trial counsel improperly commented on Staff Sergeant Stout's security clearance, and by implication, his duties in the Air Force.
>
> The court is concerned that the improper argument by trial counsel and his arguing facts not in evidence has prejudiced you in being able to provide a fair and appropriate sentence for Staff Sergeant Stout in this case, and you are to disregard trial counsel's improper argument in determining whether you should adjudge any punishment or no punishment in this case.
>
> At this point I want to ask the members, collectively, if they can adhere to the court's instruction to disregard [] trial counsel's improper argument and arguing facts not in evidence as they deliberate on a fair and appropriate sentence,

and to consider only the evidence that has been admitted into this court-martial for your review and consideration?

Do the court members agree that they are able to put aside the improper argument by trial counsel, and solely decide this case on the evidence as presented and come up with a fair and appropriate punishment, if any, for Staff Sergeant Stout?

All the members responded affirmatively.

During individual voir dire, the panel president stated the argument made by trial counsel—the words that were objected to—did not impact his thinking on the appellant's sentence, and that "[i]t simply didn't play a role." The other two panel members stated the comments concerning the appellant's security clearance did not and would not affect their determination of an appropriate sentence in this case.

Trial counsel completed his sentencing argument without any further objection from the defense. He asked the panel to sentence the appellant to a bad-conduct discharge, confinement for six months, reduction to E-1, and forfeiture of two thirds pay for one year. Trial defense counsel argued against the bad-conduct discharge and confinement. Instead, she asked the panel members to sentence the appellant to hard labor without confinement. Ultimately, the appellant was sentenced to a bad-conduct discharge, hard labor without confinement for 30 days, restriction to base for 30 days, and reduction to E-4.

The government conceded at trial that the argument was improper, so we must decide whether the error was prejudicial under Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See United States v. Fletcher*, 62 M.J. 175, 184–85 (C.A.A.F. 2005). Improper argument is prejudicial if it so tainted the proceeding that we cannot be confident that the members sentenced the appellant on the basis of the evidence alone. *Id.* We evaluate the impact by balancing: (1) the severity of the improper argument, (2) the measures adopted to cure the improper argument, and (3) the weight of the evidence supporting the conviction. *See id.*

We find that the appellant was not prejudiced. The severity of the improper argument was limited by the timely action of trial defense counsel and the military judge. The improper aspect of the argument arose only once and was terminated almost at inception. Furthermore, the military judge undertook thorough measures to cure any taint. He provided a strongly worded instruction and permitted both sides to voir dire the members. Our superior court has endorsed a curative instruction as a remedy for improper argument. *See United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000) ("Court members are presumed to follow the military judge's instructions. . . . an improper argument can often be cured by an appropriate limiting instruction."). The

evidence adduced at trial, in the form of two separate urinalysis tests showing the presence of cocaine metabolite in the appellant's urine, was convincing evidence of the appellant's guilt supporting the conviction without reference to the improper argument. We are confident that the members sentenced the appellant on the basis of the evidence alone.

Furthermore, we "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006); *see also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). We have considered this particular appellant, the nature and seriousness of his offense, his record of service, all matters contained in the record of trial, and his arguments on appeal, and we find the approved sentence is appropriate.

*Timing of Sentencing Phase*

The appellant was found guilty at around 1720 on 25 September 2013, approximately nine hours after that day's trial proceedings began. The military judge asked the panel president whether the members wanted to continue into the evening with the sentencing phase or recess until the next day. The president responded that the panel preferred to continue for a short time and then recess and reconvene the next afternoon. For reasons related to payment of the court reporter, the government asked to recess and reconvene the next day. When the military judge asked trial defense counsel whether they desired to continue or recess for the evening, the following discussion took place:

> DC: Yes, Your Honor, and certainly the interest of all parties are    important, but Sergeant Stout's preference *is to finish this evening. I think it's unfair to him to have go home, in light of the verdict, and wait until tomorrow. And I have concerns with that as well*. . . .
>
> MJ: Defense Counsel, you said you had concerns about not continuing into this evening. Does -- can you elaborate on those  concerns, or is that something you're not willing to go into?
>
> DC: I would prefer not to go into it, Your Honor.
>
> (Emphasis added).

Based on the defense's preference and their concern for the appellant, the military judge decided to proceed with presentencing rather than recessing for the evening. The military judge confirmed that a panel member who had a social commitment that evening would be able to give "full and due consideration" to all the matters presented during presentencing and would be able to complete his duties to the best of his ability.

Following the admission of sentencing evidence and the arguments of counsel, the panel began its sentencing deliberations at 2237 hours that evening. At 2358, 80 minutes later, the panel reached its decision on the appellant's sentence. This was approximately 16 hours after the court-martial had convened that morning.

The appellant now argues that the military judge abused his discretion by deciding to proceed "without first confirming with defense and the members that they were confident they could competently continue with the case." We disagree.

Judges are owed great deference on matters of scheduling and continuances, and "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" will result in reversal. *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). There is no evidence that any of the participants in this court-martial were unable to competently proceed with the trial into the evening. In fact, the defense raised concerns about the panel *not* continuing into the evening. The military judge fully considered each of the participant's concerns and he based his decision to proceed on the needs and request of the appellant. There was nothing "unreason[able]" or "arbitrary" about this decision, and the military judge did not abuse his discretion.

*Testimony regarding Redacted Information*

At trial, the defense moved to have the appellant's signature and initials redacted from the documentation and specimen bottles relating to both of his urinalysis tests. Citing to Mil. R. Evid. 304, the defense argued these were statements of the accused and the defense had not received the required notice that the government intended to offer them as evidence against him.[6] The military judge agreed and ordered the redaction of the appellant's signatures and his initials. However, the military judge advised that he would allow the witnesses to "testify whether or not they observed [the appellant] acknowledging the process and steps that [he] went through." Further explaining his ruling, the military judge said, "I'm not going to restrict the government from identifying that bottle as belonging -- or it being the bottle of Sergeant Stout."

---

[6] We note that the parties and the military judge referred to a version of Mil. R. Evid. 304 that had recently been superseded based on the President's 15 May 2013 Executive Order implementing the 2013 amendments to the Manual for Courts-Martial. *See* Proclamation No. 13643, 78 Fed. Reg. 29559 (May 25, 2013). We find no prejudice to the appellant from this error because the pertinent provisions of Mil. R. Evid. 304 in the new rule were substantially the same as the predecessor rule.

During the testimony of the Drug Testing Program Administrative Manager (DTPAM) about the processes used to collect the appellant's urine specimens, the witness explained the standard practice of creating a memorandum for record (MFR) if any flaws were noted during the drug testing quality control process. The government then entered into evidence, without defense objection, an MFR the witness prepared because the appellant's initials on the sample bottle were illegible. Additionally, after the government entered into evidence the drug testing register for the appellant's 12 April 2013 drug test where the appellant's signature had been redacted, the DTPAM testified the appellant signed this document.

Although the defense did not object, this testimony prompted the military judge to sua sponte issue the following instruction to the members:

> [T]he witness mentioned something about a signature. You are to disregard his comment about that and you're not to speculate on whose signatures he may have been speaking about, and you are not to consider that as part of the evidence.

The noncommissioned officer who verified the appellant's identity when he arrived for his 12 April 2013 urinalysis also testified that he observed the appellant sign the drug testing register and initial his specimen bottle. Similarly, the individual who performed that role at the 7 May 2013 urinalysis testified that he saw the appellant sign the register for that test.

Out of concern that witnesses may have inadvertently testified about information that he ordered redacted, the military judge decided to issue a remedial instruction. With the concurrence of the parties, the military judge instructed the members:

> Prosecution exhibits 6, 7, 9 and 11 have been redacted. These documents were redacted by an order of the Court to remedy a failure to provide notice to the defense as required by the Military Rules of Evidence. It is not your job to discern what has been redacted and you are not to speculate on what has been redacted from these documents. You may only consider the information that is present on the particular document.

Pursuant to *Grostefon*, the appellant argues that the military judge abused his discretion by allowing testimony regarding information he ordered the government to redact and by failing to give an adequate remedial instruction. We disagree.

When court-members have heard evidence deemed inadmissible by a military judge, a curative instruction is the preferred remedy for correcting that error, so long as

the instruction is adequate to avoid prejudice to the accused. *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000). Whether a panel was properly instructed is a question of law we review do novo. *McDonald*, 57 M.J. at 20. A military judge's decision to provide an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424. The military judge has "considerable discretion" in tailoring instructions to the evidence and the law. *Hopkins*, 56 M.J. at 395. Here, we find the military judge's instruction was adequate to avoid prejudice to the appellant.

The DTPAM spontaneously uttered a vague comment about the appellant's signature while he was referring to Prosecution Exhibit 6: a document that, in addition to the appellant's redacted signature, also contained the appellant's printed name, social security number, and the batch and specimen number of his urine specimen. The defense did not object to this utterance despite having been instructed by the military judge that there was no standing Mil. R. Evid. 304 objection and that it was their obligation to object whenever they felt it was appropriate. Nevertheless, the military judge instructed the DTPAM to not comment on any redacted material and instructed the members to disregard any such comments. The military judge also cautioned trial counsel to better prepare the government witnesses in light of his ruling that the appellant's signatures and initials had to be redacted. Thus, the military judge did all that he could to prevent the DTPAM from testifying about the redacted material.

The military judge did not fail to give the panel members an appropriate remedial instruction. The limiting instruction concerning Prosecution Exhibits 6, 7, 9, and 11 was appropriate under the circumstances. It clearly identified the redacted exhibits, and it was unambiguous in its prohibition against speculation over what was redacted. The military judge issued this instruction out of a concern the appellant may not have fully benefitted from the initial redaction order. Moreover, trial defense counsel agreed that the instruction was adequate and necessary. The testimony from the DTPAM concerning the redacted information was minimal and the military judge reacted immediately to prevent members from considering it, making the remedial instruction largely unnecessary. In any case, it did no harm. As summarized above, there was sufficient physical and testimonial evidence, independent of the DTPAM's cursory testimony about redacted information, to prove beyond a reasonable doubt that the appellant's urine specimen twice tested positive for the metabolite for cocaine. Thus, we are confident that the appellant was in no way prejudiced by the DTPAM's general testimony concerning redacted information or the military judge's subsequent remedial instruction.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ.

Accordingly, the approved findings and sentence are **AFFIRMED.**

FOR THE COURT

STEVEN LUCAS
Clerk of the Court